ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____X

ANTHONY PAPAPIETRO,

Plaintiff,



Index No. 22-CV-1318

NOTICE OF FILING
NOTICE OF REMOVAL IN
THE UNITED STATE
DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

v.

**KOVNER, J**

**SCANLON, M.J.**

MICHEAL HOWARD CLOTT, et. al

Defendants.
_____X

### PLAINTIFF'S NOTICE OF FILING OF NOTICE OF REMOVAL

PLEASE TAKE NOTICE THAT, on May 26, 2022, Plaintiff Anthony

Papapietro, filed a Notice of Removal, pursuant to 28 U.S.C. 1332, 1441 and 1448, removing

the Plaintiff's pending Foreclosure proceedings in the Court of Common Pleas 22nd Judicial

Commonwealth of Pennsylvania County of Wayne, Index No. 332-CV-2017 for the property

of 8 Hawk Mew, Lake Ariel, Pennsylvania 18426 and the Supreme Court of the State of New

York County of Richmond, Index No. 135187/19. A true and correct copy of the Notice of

Removal is attached hereto as Exhibit 1.

PLEASE TAKE FURTHER NOTICE that, upon the filing of the Notice of

Removal with the Clerk of the United States District Court for the Eastern District of New

York and filing copies thereof with the Clerks of the Court of Common Pleas for the 22nd

1

Judicial Commonwealth of Pennsylvania for the County of Wayne and the Supreme Court of the State of New York for the County of Richmond, the Plaintiff has effected removal and the Circuit Courts shall proceed no further in these two actions unless and the until the case is remanded pursuant to 28 U.S.C. §1446(d).

Dated: Staten Island, New York
      May 25, 2022

Respectfully Submitted,

Anthony Papapietro
Pro Se Litigant
48 Orange Ave
Staten Island, NY 10302
P: (718) 448-3971
F: (718) 448-7079

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ANTHONY PAPAPIETRO,

                                    Plaintiff,

                                                          Index No. 22-CV-1318

                                                          MOTION FOR REMOVAL BASED
                                                          ON ANCILLARY JURISDICTION

v.

MICHEAL HOWARD CLOTT, et. al

                              Defendants.
--------------------------------------------------------X
To: The Honorable Rachel P, Kovner,

        This Motion for Removal concerns the Plaintiff's request to the Court to grant

Ancillary Jurisdiction over the related Federal and State law (28 U.S.C.§ 1332 & CPLR

§302(a)(1)(2)(3)(4).

        In this action. Plaintiff Anthony Papapietro, seeks this court to combine the Pennsylvania

Foreclosure (Index No. 332-CV 2017) and New York Foreclosure (Index  No. 135187/19)

proceedings against Defendants' and several of (collectively, "Defendants"). (See Compl)

        Plaintiff also raised various individual and class claims…

                              STATEMENT OF CASE

        1.   The Plaintiff assumes the Court's familiarity with the procedural history of this case

See Compl.) as well as the underlying substantive claims and facts of the case (see id. at ).

A. The Claims

        2.   In his complaint. Plaintiff stated claims under. 1. Breach of Settlement Agreement

dated June 5, 2009, 2. Breach of Contract, 3. Racketeer Influenced and Corrupt Organization

Act "RICO", 4. Fraud, 5. Conversion, 6. Unjust Enrichment, 7. Breach of Fiduciary Duty/ Theft of Corporate Opportunity/Conversion of Corporate Assets/Waste, 8. Truth In Lending Act "TILA" and 9. Real Estate Procedure Act "RESPA," against all Defendants' and their role either direct or indirect which has brought this matter to this Honorable Court.

## BACKGROUND AND FACTS

1. This action arises from three (3) alleged residential mortgage transactions Fraudulently effectuated in July of 2007. The fraudulent scheme perpetrated by those known and unknown sought to misappropriate funds by and through the defendants' continued actions to has resulted in two (2) foreclosures on of the mortgage loans 342 Hawk Mew Circle, Greentown, Pennsylvania 18436 (now 8 Hawk Mew, Lake Ariel, Pennsylvania 18426) and 49 Orange Avenue, Staten Island, New York 10302..

2. The property known as 8 Hawk Mew, Lake Ariel, Pennsylvania 18436, which has been fraudulently affected by the mortgage foreclosure action, the jurisdiction is currently asserted by the Court of Common Pleas 22nd Judicial District Commonwealth of Pennsylvania County of Wayne, Index No. 332-CV 2017, Bank of America N.A. vs. Rocco Papapietro, Anthony Papapietro and Joseph Papapietro.

3. The Property knowns as 49 Orange Avenue, Staten Island, New York 10302, which too has been fraudulently affected by the mortgage foreclosure action, and the defendants' fraud, the jurisdiction is currently asserted by

---

*Note: The New York Attorney General seized defendant Clott assets when the arrested him, this was told to the Plaintiff by one of the Prosecutors that worked with the New York Attorney General, her name was Amie Ely, she said the money was put into a Clott Victims Fund, the fund was to have between $2,000,000 -$5,000,000 in holding for victims of Michael Howard Clott.*

The Supreme Court of the State of New York, County of Richmond, Index No. 135187/19, MTGLQ Investors vs. Anthony Papapietro, Rocco Papapietro Jr., and Joseph Papapietro.

      4.   The circumstances surrounding the State of Pennsylvania and State of New York foreclosure proceedings affecting the same defendants, again derive from an elaborate scheme perpetrated by convicted felon, on information and belief, a confidential informant and the defendant Michael Howard Clott. The other Defendants' Bjorn Koritz, Esq. Attorney for Michael Howard Clott and lied about the loans being rescinded and one of the signers of the June 5, 2009, Settlement Agreement, John Murray, Esq. Attorney for Steckler, Gutman, Morrissey and Murray and one of the signers of the June 5, 2009, Settlement Agreement, Alisa Liebowitz, Ex-Wife of serial fraudster Michael Howard Clott, she had/has knowledge of the actions of her ex-husband, Erin Clott, Daughter of serial fraudster Michael Howard Clott and she benefited from the ill-gotten money from me and many others, Ryan Clott, Son of serial fraudster Michael Howard Clott and he benefited from the ill-gotten money from me and many others, John Schwartz, Operating officer of Defendant National Residential Realty Fund "NRRF" and was the go to contact for someone at Lehman Brothers, Joseph Schlamowitz, worked at Defendant Grand Bank/Carnegie Mortgage N/A, he brokered the deals that funded the properties even though he was informed the loans were rescinded, Christian Dipretoro, worked with Defendant Joseph Schlamowitz was asked to by the Defendant Michael Howard Clott to recommend a mortgage broker, he recommended Defendant Joseph Schlamowitz, Mr. Dipretoro provided a deposition on January 11, 2011 and an affidavit on February 17, 2011, which stated Defendant Schlamowitz told him "the loans were dead" (See Compl). Charles Sorenson, was approached and offered a position with Defendant's Michael Howard Clott's company, Defendant would be the "Straw Man" in the elaborate scheme, Marco Caridi transferred $198, 596.06 into a Sovereign bank

3

account of my brother on April 4, 2007 with any knowledge of my brother or myself, the funds were then transferred to Defendant Michael Howard Clott's First Horizon bank account on April 10, 2007, again this was done without our knowledge, Charles Cuneo, Esq., wrote a check in the amount of $252,611.71 on July 10, 2007 from his attorney trust account, it is believed that Defendant Cuneo was the trustee of the Clott children (Defendants' Erin & Ryan), Grand Bank/Carnegie Mortgage N/A allowed the loans to be forced through even though their own broker(Defendant Schlamowitz) knew the loans were not legitimate, Ocwen Loan servicing for failing to provide the Plaintiff with the "Original Loan" via a qualified written request ':QWR," pursuant to RESPA 12 U.S.C. §2605, Bank of America for failing to provide the Plaintiff with the "Original Loan" via a qualified written request "QWR," pursuant to RESPA 12 U.S.C. §2605, MTGLQ Investors, L,P, for failing to provide the Plaintiff with the "Original Loan" via a qualified written request pursuant to RESPA 12 U.S.C. §2605, John Schwartz, believed to have knowledge due to information obtained through email threads between Defendant Michael Howard Clott and Defendant John Murray, Esq. Chad Adler is believed to have knowledge due to information obtained through emails obtained between Defendant Michael Howard Clott, Bjorn Koritz, Esq and Defendant John Murray, Esq. Steckler, Gutman, Morrissey and Murray are the registered agents for the Defendants' National Residential Recovery Fund LLC 'NRRF", National Realty Recovery Co. LLC "NRRC", National Mortgage Recovery Group, Realty Recovery LLC, and Real Estate Recovery LLC provided assistance to complete the scheme by Michael Howard Clott. Plaintiff, Antony Papapietro at the behest of Rocco Papapietro and Howard Clott, and with the aid of defendant Koritz, (then acting attorney for National Residential Realty Fund, LLC), "NRRF" which is jointly owned by Rocco Papapietro Jr., Michael Howard Clott and Bjorn Koritz along with others defendants named in this Complaint,

4

were fraudulently induced into mortgaging three (3) properties, 62 Tabb Place, Staten Island,

New York 10302, 342 Hawk Mew Circle, Greentown, Pennsylvania 18436 (now 8 Hawk Mew,

Lake Ariel, Pennsylvania 18426 and 49 Orange Avenue, Staten Island, New York 10302.

5.   Plaintiff Anthony Papapietro was assured by Rocco Papapietro Jr., that there was

no  risk to the (3) properties; all that was needed was to show to the other investors that Rocco

was "All in"., (meaning to show Rocco was willing to put his own property in to show there was

'No Risk."). When Plaintiff decided to rescind the loans due to the belief that criminality was

afoot during the allotted three (3) day rescission period, informed Rocco who contacted

Defendant Koritz to inform the desire to rescind the loans, defendant Koritz allowed the loans to

be funded Despite Plaintiff's clear intent and communication not to do so. I was assured, the

loans would be rescinded by defendant Koritz. Despite the notice of recession, the loans were

funded by Grand Bank, N.A./Carnegie Mortgage, which was then transferred to Countrywide

Home Loans.

6.   All the Defendant's' named in this complaint benefited either directly or

indirectly from the fraudulent actions of  Defendant Clott and others named in the complaint.

7.   The Plaintiff's brother Joseph Papapietro signature is on the origination and

mortgage loan documents. Whoever signed said documents failed to realize that Joseph was

unable to sign any legal documents, because in 2000 Joseph Papapietro relinquished his right to

his interest in the properties. (See Exhibit 1). Additionally, Joseph Papapietro was diagnosed

Bipolar/Schizophrenic in 2006. (See Exhibit 2). Therefore, since Joseph Papapietro had no

capacity to enter into contracts as well as forgery in the execution of the loans, the transactions

are void.

8.   Defendant Clott was serving a seventeen-year sentence for defrauding investors.

He was in fact the notorious former owner of First American Mortgage Company, also known as FAMCO.

9. Defendant Clott and Rocco Papapietro Jr. decided to enter into a business that was formed for the purpose of purchasing and reselling distressed homes. The name of this company was National Mortgage Recovery Group Inc., also called the National Residential Realty Fund ("NRRF") and referred to various names, including Realty Recovery LLC and Real Estate Recovery LLC.

DIVERSITY JURISDICTION PURSUANT TO 28 U.S.C. §1332 (a)

10. This Court has Jurisdiction over the this matter pursuant to 28 U.S.C. 1332(a), because the amount is move than seventy-five thousand ($75,000) dollars exclusive of interest and costs, is at stake and there is diversity of citizenship between the Plaintiff and the Defendant Michael Howard Clott.

11. The Plaintiff resides in New York and the Defendant Michael Howard Clott resided in Maryland at the time of his crimes, and is currently serving 259 months in Federal Prison.

12. Defendant Michael Howard Clott was convicted in Federal Courts in New York In addition to Massachusetts for similar crimes for his actions throughout the United States.

13. Despite the fact, that Clott and his schemes had been responsible for help bringing down EF Hutton, resulting in the losses to hundreds if not millions of peoples' life savings, Rocco believed that seventeen years of incarceration would be enough to deter Clott from perpetrating fraud after release. Rocco entered into the mortgage transactions on the belief that Clott truly had reformed himself.

6

14. The Plaintiff's three properties are 62 Tabb Place, Staten Island, NY, 342 Hawk Mews Circle, Greentown, PA; and 49 Orange Avenue, Staten Island, NY. 62 Tabb Place, Staten Island, New York 10302 was first purchased on June 26, 1986 and was satisfied on May 15, 2007. The 342 Hawk Mew Circle, Salem Pennsylvania 18436 and was satisfied on November 26, 2003. The 49 Orange Avenue, Staten Island, New York 10302 and was satisfied on August 10, 2007.

15. Based on the assurances of Defendant Michael Howard Clott, Plaintiff mortgaged Three (3) jointly owned properties, 62 Tabb Place, Staten Island NY 10302, 342 Hawk Mew Circle, Greentown, Pennsylvania 18436, and 49 Orange Avenue, Staten Island NY 10302.

16. On April 4, 2007, 62 Tabb Place, Staten Island NY 10302 was mortgaged for $300,000.00 at 6.5% per annum with a monthly payment of $1,896.20. The loan was brokered by Carnegie Mortgage, LLC D/B/A Liberty Home Mortgage. This loan was rescinded and signed by Defendant Bjorn Koritz on April 5, 2007. (See Exhibit 3).

17. On or about April 4, 2007 a fund transfer of $198,596.06 was ordered into Rocco's Sovereign Bank account without Rocco's knowledge by defendant Law Office of Caridi P.C. On or about April 10, 2007, $198,596.06 was transferred, again without the Plaintiff's knowledge from Rocco's Sovereign Bank account to a First Horizon Bank account. The name Michael Howard Clott was given as the beneficiary and Rocco Papapietro was named as the originator. This transaction occurred without Plaintiff's knowledge or consent.

18. On April 13, 2007, 342 Hawk Mew Circle, Greentown, Pennsylvania 18436, was mortgaged for $120,750.00 at 8.25% per annum, with a monthly payment of $907.15. This loan was rescinded on April 13, 2007 and signed by the Defendant Bjorn Koritz.

(See Exhibit 4).  Furthermore, the loan was brokered by Carnegie Mortgage, LLC D/B/A Liberty Home Mortgage.

19. On July 10, 2007, 49 Orange Avenue, Staten Island NY 10302, was mortgaged For $364,000.00 at 7.375% per annum, with a monthly payment of $2,514.06. This loan was rescinded on July 10, 2007 at 5 PM per the Defendant Bjorn Koritz... (See Exhibit 5). The loan was brokered by Carnegie Mortgage LLC., and transferred to Countrywide Home Loans soon thereafter to begin covering tor layering the fraud.

20.  Plaintiff started to become increasingly concerned, feeling as if this was potentially a large-scale scheme to do nothing but allow Clott to get his hands on the mortgaged funds. On or about April 5, 2007 Rocco received a phone call from Defendant Clott; Michael then explained to Rocco that Christian DiPretoro had called him to tell him that Rocco had rescinded the 62 Tabb Place loan. Michael then stated, Rocco should not have tried to cancel the loan on his own but that he should rely solely on attorney Bjorn Koritz to have him handle the process for two reasons, first because the bank ( defendant Grand Bank) would be more responsive when contacted through an attorney and in fact will disregard rescission notices that come directly from homeowners and also if anything goes wrong or if the loan does not get rescinded then the attorney would be liable and could be sued."

21.  As additional assurance, defendant Attorney Koritz subsequently sent Michael what he termed a "confirmation" of the canceled mortgage note.

22.  As additional assurance, Attorney Koritz then subsequently sent Michael what he termed a "confirmation" of the canceled mortgage note.

23.   On or about April 13, 2007, Rocco directed defendant Attorney Koritz rescind the 342 Hawk Mew Circle loan and defendant Attorney Koritz subsequently sent Michael a confirmation of the canceled mortgage note.

24.   On or about July 10, 2007, Rocco directed defendant Attorney Koritz to rescind the 49 Orange Avenue loan and faxed defendant Koritz a copy of the cancelled note; unlike the previous two loans, Bjorn Koritz told Rocco to fax the cancelled loan documents directly to Grand Bank N.A./Carnegie Mortgage himself, although Koritz had emphasized the importance of the previous loans being rescinded by Koritz himself as the attorney for the matter. Koritz assured Rocco that he, the defendant Koritz, would call the bank himself to confirm that the documents had been received and that the loans were in fact rescinded.

25. Between April 4, 2007, April 13, 2007 and July 10, 2007, unbeknownst to Plaintiff, Defendant "Clott" called defendant Christian Dipretoro and asked him to recommend as mortgage broker. Dipretoro recommended the mortgage broker Defendant "Joseph Schlamowitz" for defendant herein "Grand Bank N.A./ Carnegie Mortgage."

26. Christian Dipretoro on June 16, 2008 notarized letter and Affidavit dated February 17, 2011. Further, in that same affidavit of Dipretoro, he states that defendant Schlamowitz told him the "deal was dead" and was "surprised to find out a few days later loan had been funded". (See Exhibit 6).

26. In that affidavit, defendant Schlamowitz stated that the Plaintiff had "mental problems". This is false. Plaintiff's brother Joseph Papapietro is diagnosed Bipolar/Schizophrenic as of June 30 2006. The April 9, 2008 letter from Joseph Papapietro's doctor Robert Conciatori, continues to state his diagnosis as being Bipolar/Schizophrenic, which ended up being ruled disabled on February 27, 2009.

27.  Defendant Clott was arrested and tried in the United States Southern District of New York and was convicted and sentenced on October 1, 2012 and is currently serving 259 months in Federal Prison. (See Exhibit 7), article from the United States Attorney General Office for the Southern District of New York.

28. Defendant Clott had fraudulently obtained several blank checks from Rocco's bank account. Clott issued checks from banks, such as M&T Bank, First Horizon and Northfield Bank and issued checks to Rocco. All checks bounced like super balls. Defendant Clott also attempted to wire money to Rocco's account with Northfield Bank, which failed, and the account was charged fees. (See Exhibit 8).

29. Wire transfers were also sent to Rocco's bank account with Sovereign Bank account ending 1247 on April 9, 2007 ($198,596.06), April 13, 2007 ($112,461.76) and April 16, 2007 ($16,850.00) from the Defendant "Law office of Marco Caridi". (See Exhibit 9).

30. In April of 2008, money was withdrawn from a Northfield Bank account 001-300494-0, which was in the name of Defendant Realty Recovery LLC, located at 1110 South Avenue, Staten Island, New York 10314. (See Exhibit 10).

31.  Defendant Clott withdrew the monies from accounts without any knowledge of the Plaintiff.

32. Plaintiff was unaware that the loans had been funded after Plaintiff requesting the loans be canceled and was then informed the loans never were funded.
Over the course of the years since these alleged loans were bounced to numerous "Servicing Companies", the Plaintiff explained the circumstances surrounding the "TRUE" nefarious

actions of the Defendants' and that these loans were rescinded by the Plaintiff and confirmed by Defendant (Bjorn Koritz) attorney for Defendant (Michael Howard Clott).

Plaintiff requested proof of the note and underlying loan by sending these "Servicing Companies," a Qualified Written Request "QWR," Pursuant to 12 U.S. C. §2605 (e)(1)(A) (B)(i)(ii) and 12 U.S.C. §2605 (e)(2)(A)(B)(i)(ii). (See Exhibit 11) QWR requests to the numerous "Servicing Companies."

33. The "Servicing Companies" said they did not have the "Original Loan" and they Could not provide the "Original Loan." (See Exhibit 12) responses from "Servicing Companies."

34. On information and belief the mortgage foreclosure actions are in and of themselves part of the ongoing fraud and to conceal true ownership of the mortgage notes. But for the actions and failure to comply with the "Settlement Agreement" date June 5, 2009, between Defendants' Clott, Koritz and Murray the Plaintiff would not be in current foreclosure proceedings in Pennsylvania and New York. This is proven by the in this same matter, because Defendant Clott paid the money back for the third property he scammed, that property is 62 Tabb Place, Staten Island, New York 10302. The money received from the Defendant was used to pay-off in full and is still owned by the Plaintiff today.

## PROCEDURAL HISTORY OF THE STATE COURT ACTIONS RELATED TO THIS PROCEEDING

1. Wayne County Prothonotary, Index No. 00989-CV-2008, brought November 24, 2008, Countrywide Home Loans vs. Anthony Papapietro et al... case was discontinued and ended July 6, 2012 without prejudice.

2. Supreme Court of the State of New York for the County of New York, Index No.

60035-CV-2009, this was brought by the Plaintiff Anthony Papapietro by his attorney Norah Hart of counsel for Treuhaft and Zakarin LP and resulted in the "Settlement Agreement" on June 5, 2009, which the Defendants' failed to honor.

3.   Civil Court of New York of the County of New York Index No. TS-300254-10, May of 2010, my attorney (Norah Hart Esq.) brought this matter back into court and the case was pending for many years but never resolved.

4.   Wayne County Prothonotary, Index No. 00537-CV-2014, brought September 9, 2014 Bank of America vs. Rocco Papapietro et al… case was discontinued and ended on April 10, 2015 without prejudice.

5.   Wayne County Prothonotary, Index No. 00332-CV-2017, brought July 17, 2017 Bank of America vs. Rocco Papapietro et al, case is still active and Stephen G. Bresset, Esq. is the current attorney for Anthony Papapietro et al.

6.   March 10, 2022 Plaintiff filed this matter Pro Se in the United States District Court For the Eastern District of New York, Index No. 22-CV-1318.

LEGAL STANDARD

Courts determine whether to exercise supplemental jurisdiction over state-law claims using the framework established by 28 U.S.C. § 1367. To trigger supplemental jurisdiction, a claim must be "so related to claims in the action ... that they form part of the same case or controversy." § 1367 see also United Mine Workers of Am. v. Gibbs. 383 U.S. 715,725 (1966) (holding that state and federal claims must stem from "a common nucleus of operative fact"). Once a claim passes this threshold consideration, supplemental jurisdiction is mandatory unless the claim falls into one of four enumerated exceptions:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims

over which the district court has original jurisdiction,

(3) the district court has dismissed ^ claims over which it has

original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining

jurisdiction.§1367(c) (emphasis added); Itar-Tass Russian News Agency v. Russian Kurier.

Inc., 140 F.3d 442,447 (2d Cir. 1998). If one of the § 1367(c) exceptions applies, the court

may decide to decline jurisdiction over the state-law claims but only after considering

whether such a decision upsets the interests of "judicial economy, convenience, fairness, and

comity." Carnegie-Mellon Univ. V. Cohill 484 U.S. 343, 351 11988): see Catzin v. Thank

You & Good Luck Corp., — F.3d—, 2018 WL 3747364, at *6 (2d Cir. Aug. 8, 2018).

Essentially, exercising supplemental jurisdiction over a state-law claim depends on

three questions. Does the claim fall into a common nucleus of operative fact with other

remaining federal claims? If so, does the claim meet one of the four exceptions under §

1367(c)? And, if so, is it convenient and fair to the parties to exercise supplemental

jurisdiction over the claim as well as efficient and respectful to state and federal interests?


## APPLICATION

Before this Honorable Court is a Motion to Remove based on Ancillary Jurisdiction and

A "Common Nucleus of Operative Fact" perpetrated by Defendant Michael Howard Clott

and all those involved which culminated in the Foreclosure in Pennsylvania and New York.

Plaintiff's claim against all the Defendants' falls into the same common nucleus of

operative facts Plaintiff's Federal claims against the Defendants." All claims involve

13

allegations that Defendants violated numerous Federal, Pennsylvania, and New York laws.

The contested facts in these claims thus all stem from the same time period, the same location, and the same overall circumstance—in other words, because the allegations in both the claims against the Defendants' and the [. ] claim against share "approximately the same set of events," they are considered to be part of a common nucleus of operative fact. See Treglia v.Town of Manlius. 313 F.3d 713, 723 (2d Cir. 2002). Moreover, the legal standards for analyzing [T]he and actions clearly derive from such a common nucleus of operative facts since they arise out of the same compensation [policies and practices]).

Here, the claim forms part of the common nucleus of operative fact as the Defendants since the allegations stem from approximately the same set of events and under similar legal standards. As a result, this court must exercise supplemental jurisdiction over the [ ] claim unless. Finally, even if the court had discretion to decline supplemental jurisdiction over the state claim against Liu, it would be improper to do so. When deciding to decline supplemental jurisdiction, the court must "meaningfully balance" whether declination would serve the interests of judicial economy, convenience, fairness, and comity. Catzin. — F.3d — 2018 WL 3747364, at *7: see Cahill. 484 U.S. at 351: Kolari v. N.Y. Presbyterian Host).. 455 F.3d 118,122 (2d Cir. 2006).

Here, severing jurisdiction over state claims and federal claims would force Plaintiff to litigate in [3] forums. This split would leave claims with a common nucleus of operative fact straddled between federal and state courts, something that would inconvenience all parties involved and could lead to wasted judicial resources. Additionally, if the Defendants ended up appearing in this case, conflicting judgments between state and federal courts could

arise. The resulting fragmented litigation would unfairly deprive the Defendants of a chance to protest their entries of default and would inconvenience Plaintiff, who would have to invest more resources to litigate claims stemming from the same "common nucleus of operative fact" in two forums. Finally, the interests of judicial economy support consolidating all claims in one proceeding, especially where, as here, the claims involve common evidence arising from the same set of events. See Delaney v. Bank of Am.. 766 F.3d 163,170 (2d Cir. 2014) (finding that supplemental jurisdiction is proper when claims are based on the same set of events and derive from a common nucleus of operative fact).

## CONCLUSION

By this Motion of Removal the Plaintiff requests this Honorable Court consider all the facts and the circumstances that have violated numerous Federal and States laws. The results of the Defendants' breaking these laws have resulted in two (2) foreclosure proceeding in two (2) different States. The scope of the scheme by the Defendant (Michael Howard Clott) broke Federal and States laws which he is already been convicted of and serving out his sentence.

Therefore, I ask that this Honorable Court to ask themselves just one question, how is a hard working businessman that has never committed a crime still having to be punished and possibly loss his properties while the man that committed fraud against him only sits in prison and gets away without having to pay all the money back which he started to do and stopped?

15

Dated: Staten Island, New York
        May 25, 2022

Respectfully Submitted,

Anthony Papapietro
Pro Se Litigant
48 Orange Ave
Staten Island, NY 10302
P: (718) 448-3971
F: (718) 448-7079

To:
      Michael Howard Clott
      Bjorn Koritz (deceased)
      John Murray (deceased)
      Charles R. Cuneo
      Steckler, Gutman, Morrissey & Murray
      National Residential Realty Fund, LLC
      National Realty Recovery Co. LLC
      National Mortgage Recovery Group
      Realty Recovery LLC
      Real Estate Recovery LLC
      Grand Bank N.A./Carnegie Mortgage
      Bank of America
      Ocwen Loan Servicing
      MTGLQ Investors, LP
      John Schwartz
      Chad Adler
      Joseph Schlamowitz
      Christian Dipretoro
      Marco Caridi
      Alisa Liebowitz
      Erin Clott
      Ryan Clott

16

CERTIFICATE OF SERVICE

This is to certify that the foregoing NOTICE OF REMOVAL, with exhibits, was

hand delivered on the 26th day of May 2022.

Dated: Staten Island, New York
       May 25, 2022

Respectfully Submitted,

_____
Anthony Papapietro
Pro Se Litigant
48 Orange Ave
Staten Island, NY 10302
P: (718) 448-3971
F: (718) 448-7079

17

# *EXHIBIT 1*

ORDERED, on consent, that JOSEPH PAPAPIETRO shall convey any and all interest he has in the real properties at 62 Tabb Place, Staten Island, New York, 10 Riley Place, Staten Island, New York, 49 Orange Avenue, Staten Island, New York and Indian Rocks, Pennsylvania to his father, ROCCO PAPAPIETRO and his brother ANTHONY PAPAPIETRO in equal shares with the contingency that the fair market value of 62 Tabb Place, Staten Island, NY is approximately $175,000 and the outstanding mortgage against the property is approximately $50,000; that the fair market value of 10 Riley Place, Staten Island, NY is approximately $175,000 and the outstanding mortgage against the property is $35,000; that the fair market value of 49 Orange Avenue is approximately $200,000 and the outstanding mortgage against the property is approximately $50,000 and that the fair market value of the Pennsylvania property is approximately $100,000 and the outstanding mortgage against the property is $20,000 and that there are no other encumbrances against these properties; and it is further

ORDERED, on consent, that ROCCO PAPAPIETRO and ANTHONY PAPAPIETRO will hold JOSEPH PAPAPIETRO harmless in connection with the outstanding mortgages on the above referenced four (4) properties; and it is further

11

ORDERED, on consent, that REGINA PAPAPIETRO, will execute satisfactions as to any Judgments against these properties upon presentation.

E N T E R :

*Nov 16, 2000*

J. _____ S. _____ C. _____

Hon. Joseph J. Maltese
Justice of the Supreme Court

GRANTED

NOV 2 1 2000

CLERK

12

# *EXHIBIT 2*

**ROBERT CONCIATORI  MD**
**245 NORTH GANNON AVE.**
**STATEN ISLAND, NY  10314**
**(718)  767 2059**

4/9/08

To:  Kuhn and O'Toole LLP
One Edgewater Plaza Suite 206
SI  NY 10305
Fax:  718  720 2116

Re:  Joseph Papapietro


     Mr. Papapietro remains under my psychiatric care. He is diagnosed as being a Chronic Paranoid Schizophrenic.  He is treated with a combination of antipsychotic medication and psychotherapy.  Without medications he is a dangerous and violent individual, prone to physically assaulting his "enemies".    Even on medications, he remains guarded and paranoid, though not assaultive.

     Given his state of mind, he is not capable of any type of work or getting along with other people in a work situation.  Unfortunately his condition is chronic and permanent and not expected to change.  He is totally disabled from being able to work.


Yours truly,

Robert Conciatori MD
Board Diplomate ABPN
Adult and Forensic Psychiatry

# *EXHIBIT 3*

Apr 05 07 01:31p                                718-448-7079        p.1

PAID $300,000.⁰⁰

APR 0 5 2007
BETHESDA,MD
BY____

BJORN R. KORITZ, Esq.

48 OLD MILL RD. GREENWICH, CT 06831

203-629-0110 (TEL)
203-629-0122 (FAX)    CANCELLED
KORREE@MSN.COM

MIN: 1003532-0001074271-3     **NOTE**     Loan Number: 0001074271

APRIL 4, 2007              EAST HANOVER              NEW JERSEY
   [Date]                      [City]                   [State]

62 TABB PLACE, STATEN ISLAND, NEW YORK 10302
[Property Address]

**1.  BORROWER'S PROMISE TO PAY**
    In return for a loan that I have received. I promise to pay U.S. $300,000.00        (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is CARNEGIE MORTGAGE, LLC D/B/A LIBERTY HOME MORTGAGE, A NEW JERSEY LIMITED LIABILITY COMPANY
    I will make all payments under this Note in the form of cash, check or money order.
    I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.  INTEREST**
    Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      6.500 %.
    The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.  PAYMENTS**
    (A)  Time and Place of Payments
    I will pay principal and interest by making a payment every month.
    I will make my monthly payment on the  1st  day of each month beginning on  JUNE 1 2007 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  MAY 1, 2037         , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
    I will make my monthly payments at  4287 ROUTE ONE SOUTH, P.O. BOX 940, MONMOUTH JUNCTION, NEW JERSEY 08852-0940
                              or at a different place if required by the Note Holder.

    (B)  Amount of Monthly Payments
    My monthly payment will be in the amount of U.S. $1,896.20

**4.  BORROWER'S RIGHT TO PREPAY**
    I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
    I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

CANCEL AS OF 4-5-07 FUNDS
ARe ReturneD  4-5-07  2:25 pm
                                   Recca
                                   Pypepilia

Borrower Initials: ____

NEW YORK FIXED RATE NOTE-Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3233 1/01          Page 1 of 3

DocMagic  www.docmagic.com

PAID $300,000.⁰⁰

APR 0 5 2007
BETHESDA,MD
BY____

Apr 05 07 01:32p                          718-449-7079                  p.3

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18. Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 16 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

CANCELLED

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_CANCel AS of 4-5-07 FunDS ARe_
_Returned 4-5-07, 2:26 pm_
                    _Rocco Papapietro_

_____ (Seal)          BJOHN R. KORITZ, Esq.
ROCCO PAPAPIETRO JR          -Borrower

_____ (Seal)
                             -Borrower          48 OLD MILL RD. GREENWICH, CT 06831

_____ (Seal)          203-629-0110 (TEL)
                             -Borrower          203-629-0122 (FAX)
PAID $ 300,000.00                                KORRBE@MSN.COM

APR 0 5 2007                                     *[Sign Original Only]*

BY

# *EXHIBIT 4*

MAR-31-2009 14:49 From:                     To:6465372662        P.10/11

Apr 13 07 03:57p

PAID $120,750.°°

APR 1 3 2007

*BJORN KORITZ*
*ATTORNEY iN FACT*

CANCELLED

MIN: 1005532-0001074285-3        **NOTE**        Loan Number: 0001074285

APRIL 13, 2007              EAST HANOVER        NEW JERSEY
[Date]                      [City]              [State]

342 HAWK NEW CIRCLE, GREENTOWN, PENNSYLVANIA 18426
[Property Address]

48 OLD MILL RD, GREENWICH, CT 06831

203-629-9110 (TEL)
203-629-0122 (FAX)
KORHEE@MSN.COM

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 120,750.00       (this amount is
called "Principal"), plus interest, to the order of the Lender. The Lender is CENSTAR MORTGAGE, LLC
D/B/A LIBERTY HOME MORTGAGE, A NEW JERSEY LIMITED LIABILITY COMPANY
I will make all payments under this Note in the form of cash, check or money order.
   I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and
who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest
at a yearly rate of      9.250 %.
   The interest rate required by this Section 2 is the rate I will pay both before and after any default described in
Section 6(B) of this Note.

**3. PAYMENTS**

(A)  Time and Place of Payments
   I will pay principal and interest by making a payment every month.
   I will make my monthly payment on the 1st day of each month beginning on      JUNE 1,
2007 . I will make these payments every month until I have paid all of the principal and interest and any other
charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled
due date and will be applied to interest before Principal. If, on   MAY 1, 2037 , I still owe
amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
   I will make my monthly payments at 4287 ROUTE ONE SOUTH, P.O. BOX 940,
MONMOUTH JUNCTION, NEW JERSEY 08852-0940
                                              or at a different place if required by the Note Holder

(B)  Amount of Monthly Payments
   My monthly payment will be in the amount of U.S. $ 907.15

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only
is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.
I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
   I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder
will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder
may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my
Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in
the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the
interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits,
then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit;

Borrower Initials  *RP*   *AP*                                   Centlogic Systems 800-555-1602
MULTISTATE FIXED RATE NOTE--Single Family--                     www.centlogic.com
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200   1/01                                    Page 1 of 3

PAID $120,750.00

APR 1 3 2007



*CANCEL AS OF 4-13-07 FUNDS*
*ARe Returned 4-13-07*
*Barron Properties*

MAR-31-2009 14:50 From: To:6465372662 P.11/11

Apr 13 07 03:58p 718-448-7079 p.3

the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
ROCCO PAPAPIETRO   -Borrower              -Borrower

_____ (Seal)          _____ (Seal)
                  -Borrower              -Borrower

_____ (Seal)          _____ (Seal)
                  -Borrower

PAID $ 120,750.00

APR 13 2007

BY

EUGAN B. KORITZ, Esq.

49 OLD MILL RD, GREENWICH, CT 06831

203-629-0110 (TEL)
203-629-0122 (FAX)
KORITZ@MSN.COM

CANCELLED

CANCEL AS OF 4-13-07 FUNDS are returned 4-13-07
Rocco Papapietro

JUN-10-2010 17:03 From:                                    To:6465372662                    P.1/40

(A)

# NOTICE OF RIGHT TO CANCEL

Loan Number: 0001074285

Borrowers:  ROCCO PAPAPIETRO, ANTHONY PAPAPIETRO, JOSEPH PAPAPIETRO

Property Address:  342 HAWK MEW CIRCLE, GREENTOWN, PENNSYLVANIA 18426

**YOUR RIGHT TO CANCEL**

You are entering into a transaction that will result in a mortgage, lien or security interest on or in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

1. the date of the transaction, which is  APRIL 13, 2007        ; or
2. the date you receive your Truth in Lending disclosures; or
3. the date you receive this notice of your right to cancel.

If you cancel the transaction, the mortgage, lien or security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage, lien or security interest on or in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at
CARNEGIE MORTGAGE, LLC D/B/A LIBERTY HOME MORTGAGE
120 EAGLE ROCK AVENUE
EAST HANOVER, NEW JERSEY 07936

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of _____ (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL.**

_[signature]_
_____          _____
Consumer's Signature                        Date
ANTHONY PAPAPIETRO

**ACKNOWLEDGMENT OF RECEIPT**

EACH OF THE UNDERSIGNED HEREBY ACKNOWLEDGES THE RECEIPT OF TWO (2) COMPLETED COPIES OF THIS NOTICE OF RIGHT TO CANCEL.

_[signature]_  4/13/007
_____
ANTHONY PAPAPIETRO              Date

NOTICE OF RIGHT TO CANCEL/RESCISSION MODEL FORM H-8 (GENERAL)                    Copyright ©Fiserv 800-648-7284
03/17/00                                                                           www.docmagic.com

JUN-10-2010 17:03 From:                                    To:6465372662                    P.2/40

# NOTICE OF RIGHT TO CANCEL

Loan Number: 0001074285

Borrowers:  ROCCO PAPAPIETRO, ANTHONY PAPAPIETRO, JOSEPH PAPAPIETRO

Property Address:  342 HAWK MEW CIRCLE, GREENTOWN, PENNSYLVANIA 18426

## YOUR RIGHT TO CANCEL

You are entering into a transaction that will result in a mortgage, lien or security interest on or in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

1. the date of the transaction, which is  APRIL 13, 2007            ; or
2. the date you receive your Truth in Lending disclosures; or
3. the date you receive this notice of your right to cancel.

If you cancel the transaction, the mortgage, lien or security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage, lien or security interest on or in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at
CARNEGIE MORTGAGE, LLC D/B/A LIBERTY HOME MORTGAGE
120 EAGLE ROCK AVENUE
EAST HANOVER, NEW JERSEY 07936


You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of
(or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL.

*Rocco Papapietro*                    4-13-07
Consumer's Signature                        Date
ROCCO PAPAPIETRO

## ACKNOWLEDGMENT OF RECEIPT

EACH OF THE UNDERSIGNED HEREBY ACKNOWLEDGES THE RECEIPT OF TWO (2) COMPLETED COPIES OF THIS NOTICE OF RIGHT TO CANCEL.

*Rocco Papapietro*                    4-13-07
ROCCO PAPAPIETRO                        Date

NOTICE OF RIGHT TO CANCEL/RESCISSION MODEL FORM H-8 (GENERAL)
03/17/06

DocMagic ©2008  800-649-1362
www.docmagic.com

# *EXHIBIT 5*

*RESCINDED / CANCELLED IN F*
*AS OF 5 PM 7-1*
*7/10/07*

# NOTE

PAPAPIETRO
Loan # 163087381CHL
MIN 100353220070702027

JULY 10, 2007                    MINEOLA                    NEW YORK        *[illegible signature]*
[Date]                           [City]                     [State]

49 ORANGE AVE, STATEN ISLAND, NY 10302
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $364,000.00 (this amount is called Principal), plus interest, to the order of the Lender. The Lender is **CARNEGIE MORTGAGE, LLC.** I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 7.375%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1ST day of each month beginning on SEPTEMBER 1, 2007. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on AUGUST 1, 2037, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 4287 ROUTE 1 SOUTH, MONMOUTH JUCNTION, NJ 08852 or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $2,514.06.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days

NEW YORK FIXED RATE NOTE—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                    Form 3233  1/01

163087381CHL

required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HANDS(S) AND SEAL(S) OF THE UNDERSIGNED

- BORROWER - ROCCO PAPAPIETRO JR. - DATE -

*[Sign Original Only]*

PAY TO THE ORDER OF
COUNTRYWIDE BANK, FSB
WITHOUT RECOURSE.

CARNEGIE MORTGAGE

Cancelled/Rescinded in Full
As of 5pm 7-10-07

Rocco Papaputes

Deern Nkr. +c ISG

NEW YORK FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3233  1/01
Page 3 3

# *EXHIBIT 6*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
_____

ROCCO PAPAPIETRO AND ANTHONY PAPAPIETRO,

                  Index No. 600535/2009

          Plaintiffs,               **AFFIDAVIT OF**
                                      **CHRIS DIPRETORO**

         -against-

 MICHAEL HOWARD CLOTT, JOHN MURRAY, JOHN SCHWARTZ, BJÖRN KORITZ,
COUNTRYWIDE HOME LOANS, GRAND BANK, N.A./CARNEGIE MORTGAGE, JOSEPH
SCHLAMOWITZ, CHRISTIAN DIPRETORO, HOME OPTIONS INC., CHARLES SORENSON,
MARCO CARIDI, LAW OFFICE OF CARIDI PC, NATIONAL REALTY RECOVERY (also referred
by the names NATIONAL REALTY FUND/NATIONAL MORTGAGE RECOVERY
GROUP/REALTY RECOVERY LLC/REAL ESTATE RECOVERY LLC, ALISA LIBOWITZ CLOTT,
ERIN CLOTT, and RYAN CLOTT,

                    Defendants.
_____

STATE OF NEW YORK   )
                  )   ss.
COUNTY OF NEW YORK  )

Christian Di Pretoro, being duly sworn, deposes and says that:

1. I reside at 300 Walnut Hill Lane, Havertown, Pennsylvania, 19083.

2. I met Michael Clott in early 2006 when he approached me regarding the purchasing of
   undervalued properties for resale.

3. I then met Rocco Papapietro on one occasion in 2006 through Mike Clott.

4. I met Joe Schlamowitz when I worked with Bloomington Finance doing wholesale
   mortgages and while Schlamowitz worked as a mortgage broker.

5. In approximately April or May or 2007, Michael Clott asked me to recommend a
   mortgage broker in my area. I said that I did and it was shortly after that I gave Rocco,
   Schlamowitz's number. Joe Schlamowitz then took a loan application from Rocco with

1

the intention of passing out for Rocco's property to buy a share of Michael Clott's company. This was told to me by Michael Clott.

6. I was contacted by Joe Schlamowitz sometime after the loan docs were signed but before the loan was funded. Schlamowitz told me that he had received a call from Grand Bank the lender and Schlamowitz informed me that he was told that Anthony Papapietro, Rocco's brother sent in a recision form canceling the loan. Schlamowitz told me the deal was dead. I apologized for the waste of time and told him I would try to find out what was going on and get back to him. I said I would try to get a hold of Rocco and Mike to find out what was happening.

7. I called Rocco and did not reach him and I was unable to speak to him. I got a hold of Michael Clott and Michael Clott told me that it was Rocco's crazy brother Anthony and that wanted to cancel the loan, and that Anthony has real mental problems. Michael Clott then told me that he call Rocco and take care of it.

8. A few days later Schlamowitz called me and he told me that he was surprised that the loan had funded. I recall telling Schlamowitz that Anthony Papapietro had mental problems and Schlamowitz said that it was not his problem because Grand Bank would not have funded the loan unless Rocco and Anthony Papapietro had shown up in front of a bank representative, with proper identification and in writing that they do not wish to cancel the loan.

Dated:                                                                    2/17/2011

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
MICHELLE A. GHISU-LEONE
NOTARY PUBLIC
CITY OF P... ...-NIA , PHILADELPHIA COUNTY
MY COMM... ... ...arch 18, 2012

Sworn to before me this
17 day of _February_, 2011

_Michelle A. Ghisu-Leone_
NOTARY PUBLIC

_Christian Di Pretoro_
Christian Di Pretoro

2

June 16th, 2008

This letter is to attest to the conversations between myself and Michael H. Clott of Bethesda Maryland referencing the financing for Rocco Papapietro. It was near April 2006 when Mike Clott **approached** me to arrange for financing for Rocco Papapietro in order for Rocco to buy into Michael Clott's company ( National Residential Realty Fund). I put Mike in contact with Carnegie Mortgage to obtain the loans. Mike paid for the appraisals on the properties, I believe through personal checks or through John Murry's office. Moreover, Mike eventually dealt with Joe Schlamowitz at Carnegie and left me out of the process. I still wonder why a legitimate attorney would be involved with Mike Clott. Everything went as usual until the day of the loan closing. At that time I received a call from Joe Schlamowitz at Carnegie Mortgage informing me that Rocco rescinded his loan. I was contacted by Michael H. Clott and was advised that Rocco had an older brother who was mentally incompetent and did not want to sign for the loan since he was on the title. I advised Michael Clott that the loan could not proceed until Rocco spoke directly with the lender to clarify the issue. To this day I still don't understand how the loan was able to be funded.

Sincerely,

Christian DiPretoro

Sworn to and subscribed before me
this 12 day of July 20__

Notarial Seal

# EXHIBIT 7

7/25/2019          Serial Fraudster Sentenced In Manhattan Federal Court To 259 Months In Prison For Committing Multiple Real-Estate Investment Scams





THE UNITED STATES ATTORNEY'S OFFICE
## SOUTHERN DISTRICT *of* NEW YORK

ARCHIVE

SEARCH THE ARCHIVE

[                    ] SEARCH

Home » News

NEWS



**Current Site**

Department of Justice

U.S. Attorneys

Southern District of New York

# Serial Fraudster Sentenced In Manhattan Federal Court To 259 Months In Prison For Committing Multiple Real-Estate Investment Scams

**FOR IMMEDIATE RELEASE**                    Monday, October 1, 2012

**Archives**

Department of Justice

U.S. Attorneys

Southern District of New York

Preet Bharara, the United States Attorney for the Southern District of New York, announced that MICHAEL HOWARD CLOTT, a/k/a "Michael Howard," of Bethesda, Maryland, was sentenced today in Manhattan federal court to 21 years and 7 months in prison for engaging in a series of real estate investment and mortgage fraud schemes in which he attempted to steal more than $10 million from his victims. In 2008 and 2009, CLOTT –who had multiple previous fraud convictions – used an alias, stolen identities, and forged documents to lure victims into giving him millions of dollars for purported real estate investments and home purchases. CLOTT then misappropriated the money, using at least $1.3 million to purchase a hair salon for his daughter. After pleading guilty to three fraud schemes in December 2009, CLOTT fled while on bail, and was recaptured in April 2010 in Massachusetts. He was then charged with bail jumping in connection with a fourth investment fraud scheme, to which he also pled guilty, in July 2011. CLOTT was sentenced today by U.S. District Judge Richard M. Berman.

Manhattan U.S. Attorney Preet Bharara said: "Undeterred by his multiple convictions, Michael Howard Clott is the very definition of a 'serial fraudster,' targeting his unsuspecting victims in scam after scam for nearly three decades. At a minimum, today's sentence will prevent him from ensnaring anyone else in his frauds for many years to come."

According to the various charging instruments, other documents filed in Manhattan federal court, and statements made at today's sentencing proceeding:

CLOTT's Investment and Mortgage Fraud Criminal History

Prior to engaging in the crimes for which he was sentenced today, CLOTT already had five felony fraud convictions on his record.

- From approximately 1982 through 1985, CLOTT used the First American Mortgage Company ("FAMCO"), which he founded in 1979, to defraud investors. In December 1987, CLOTT was sentenced by a federal judge in Maryland to 150 months in prison for orchestrating that fraud.
- While the FAMCO charges were pending, CLOTT perpetrated a second fraud in 1987, using an entity called First Capital Mortgage Co., and he was sentenced by a federal judge in Maryland to an additional 120 months in prison.
- While he was pending designation by the Bureau of Prisons for the FAMCO and First Capital Mortgage Co. cases, CLOTT defrauded additional victims, for which he received an additional sentence of 18 months in prison, by a federal judge in Maryland.
- While he was incarcerated for his first three convictions, CLOTT defrauded inmates and their families at Raybrook Federal Correctional Institution as part of a loan fraud scheme. After he was released from prison in 1994, CLOTT defrauded homeowners of approximately $2.5 million. For these two schemes, Clott was sentenced in Maryland to a total of 150 months in prison, which sentence was subsequently reduced. He was on supervised release for those convictions when he committed the frauds for which he was sentenced today.

The Four Fraud Schemes for which CLOTT was Sentenced Today

In 2008 and 2009, while on supervised release from his 1994 conviction, CLOTT returned to defrauding investors. In each of the fraud schemes for which he was sentenced today, CLOTT used the alias "Michael

Case 1:22-cv-03409-RPK-VMS   Document 1   Filed 05/27/22   Page 42 of 106 PageID #: 42

7/25/2019          Serial Fraudster Sentenced In Manhattan Federal Court To 259 Months In Prison For Committing Multiple Real-Estate Investment Scams

Howard" in an effort to conceal his true identity and his prior criminal conduct. In CLOTT's first scheme, he pretended to have purchased a Margate, New Jersey, apartment for the victim, and to have provided a loan of $859,000 to fund the purchase. In fact, the whole deal was a scam, and CLOTT neither purchased the apartment nor fronted any loan money. CLOTT caused the victim to pay him $455,000 toward the repayment of the purported loan, and then misappropriated those funds.

In his second scheme, which he committed in May 2008, CLOTT fraudulently sought to obtain a $1 million mortgage on a property in Purchase, New York, using a stolen identity and a forged power of attorney.

In a third scheme, in mid- to late 2008, CLOTT defrauded a Maryland family of approximately $200,000 by representing that he was investing their money in real estate. Instead, he stole it.

In his fourth scheme, which he committed in 2009, CLOTT obtained access to approximately $9 million by fraudulently representing to the victim-investment company that the funds would be held in escrow to enable him to engage in real estate transactions for the benefit of investors. Instead, CLOTT stole millions of dollars, using the money to, among other things, purchase a hair salon and spa for $1.3 million for his adult daughter. Through forfeiture proceedings, the hair salon and spa and approximately $660,000 cash were released to the victim-investment company.

CLOTT was charged with the first three fraud schemes in 2009, and pled guilty to those schemes on December 14, 2009. After the Government learned from victims that CLOTT was committing a fourth fraud and sought his immediate remand into custody, CLOTT fled. He remained a fugitive until he was arrested near Boston, Massachusetts, on April 21, 2010. On July 29, 2011, CLOTT entered a second guilty plea to a Superseding Information charging him with wire fraud, in connection with the fourth fraud, and bail jumping.

\*          \*          \*

In addition to the prison term, Judge Berman sentenced CLOTT, 59, to three years of supervised release, and ordered him to pay a $600 special assessment fee. Judge Berman also ordered CLOTT to pay a total of over $2.6 million in restitution, and to forfeit over $5 million.

CLOTT also faces pending mail and wire fraud charges in the District of Massachusetts for additional conduct he allegedly committed in early 2010, while he was a fugitive from justice from the Southern District of New York.

Mr. Bharara praised the FBI for its exceptional work on the investigation. He also thanked the U.S. Marshals Service for its assistance.

This case is being handled by the Office's Complex Frauds Unit. Assistant U.S. Attorneys Amie N. Ely and Michael Lockard are in charge of the prosecution.

12-295

Tweet

Return to Top

**USAO ARCHIVE
HOME**

JUSTICE.GOV/USAO

Accessibility          Justice.gov
FOIA                   USA.gov
Privacy Policy
Legal Policies &
Disclaimers

# *EXHIBIT 8*

②

*[upside-down check at top of page]*

M&T Bank

MetLife

1092

MICHAEL HOWARD CLOTT
11 EDGEWOOD LN.
PURCHASE, NY  10577-2309

$ 834,122 00

Eight hundred thirty four thousand ...

2-11
520
139

---

MICHAEL HOWARD CLOTT
11 EDGEWOOD LN.   PH. 240-273-6779
PURCHASE, NY  10577

139

68-923/560
178261028

_____ 20 ____

Pay To The
Order Of   Rocco Papapietro                      $ 410,000

four hundred ten thousand                        DOLLARS

FIRST
HORIZON.
www.firsthorizon.com
FOR CHECK VERIFICATION DIAL 1-800-489-2111

Relationship
First
Checking

Michael Clott

Memo Repayment on penalty

⑈056009233⑈0139 178261028⑈

---

MICHAEL HOWARD CLOTT
11 EDGEWOOD LN.   PH. 240-273-6779
PURCHASE, NY  10577

140

68-923/560
178261028

_____ 20 ____

Pay To The
Order Of   Rocco Papapietro                      $ 415,000

four hundred fifteen thousand th                 DOLLARS

FIRST
HORIZON.
www.firsthorizon.com
FOR CHECK VERIFICATION DIAL 1-800-489-2111

Relationship
First
Checking

Michael Clott

Memo Repayment on penalty

⑈056009233⑈0140 178261028⑈

---

who paid

Realty Recovery Group

0093
1-7145/2260
01

DATE _____

PAY TO THE
ORDER OF   Realty Recovery Group              $ 834,122

Eight hundred thirty four thousand             DOLLARS

Northfield
Bank
1481 Forest Ave
Staten Island, NY 10302
www.eNorthfield.com

Michael Clott

⑈226021157⑈ 010136927 6⑈   0093

Cancelled
check

⑫

**NORTHFIELD BANK**
1731 VICTORY BLVD
STATEN ISLAND NY 10314

ACCOUNT NUMBER  00010136349
DATE  12/12/07
TELEPHONE  000-000-0000

ROCCO PAPAPIETRO
NATIONAL RESIDENTIAL REALTY
1110 SOUTH AVE
STATEN ISLAND NY  10314-3403

Dear Customer,

Your account number 001-00010136349 has been debited in the amount of
$364,000.00  for a returned deposited item. A $10.00 service fee has also
been charged to your account. Please adjust your records accordingly. A copy
of the item is enclosed.

12





**NORTHFIELD BANK**
1731 VICTORY BLVD
STATEN ISLAND NY 10314

ACCOUNT NUMBER  00010136349
DATE  12/12/07
TELEPHONE  000-000-0000

ROCCO PAPAPIETRO
NATIONAL RESIDENTIAL REALTY
1110 SOUTH AVE
STATEN ISLAND NY  10314-3403

Dear Customer,

Your account number 001-00010136349 has been debited in the amount of $470,750.00 for a returned deposited item. A $10.00 service fee has also been charged to your account. Please adjust your records accordingly. A copy of the item is enclosed.

13





# *EXHIBIT 9*

MAR-31-2009 14:49 From:                          To:6465372662              P.4/11

---

**SOVEREIGN BANK**               **FUNDS TRANSFER NOTIFICATION**                **04-09-2007**

ROCCO PAPAPIETRO JR
43 ORANGE AVE

STATEN ISLAND , NY 10302-2038

To: ROCCO PAPAPIETRO JR

This funds transfer was received on 04/09/2007, for $198596.06.
The funds have been CREDITED to account # ***********1247.

Sender:
    Name         : JPMORGAN CHASE
    ABA #        : 021000021
    Reference #    : 0097400099BN
    Received from  :
    By Order Of    : THE LAW OFFICE OF CARIDI PC

Fe    ference #    : 20070409C1QAE01X00149404091701FT01

Additional Funds Transfer Information:

Beneficiary: ROCCO PAPAPIETRO

Beneficiary Bank:

        * * *

Originator Info: THE LAW OFFICE OF CARIDI PC

Originator Bank:

Originator Bank Info: REFINANCE PROCEEDS

Bank to Bank and all other FRB info fields:

*SOVEREIGN BANK*            *FUNDS TRANSFER NOTIFICATION*            *04-13-2007*

ROCCO PAPAPIETRO JR
48 ORANGE AVE
STATEN ISLAND , NY 10302-2038

To: ROCCO PAPAPIETRO JR

This funds transfer was received on 04/13/2007, for $112461.76.
The funds have been CREDITED to account # **********1247.

Sender:
     Name           : COLONIAL BANK AL
     ABA #          : 063113222
     Reference #     : 070413125052H400
     Received from   :
     By Order Of    : CHAIN OF TITLE LLC

Fed Reference #    : 20070413C1QAE01X00140604131351FT01

Additional Funds Transfer Information:

Beneficiary: ROCCO PAPAPIETRO

Beneficiary Bank:

         * * *

Originator Info: CHAIN OF TITLE LLC

Originator Bank:

Originator Bank Info:

Bank to Bank and all other FRB info fields: {6500}REFINANCE PA PROPERTY*

SOVEREIGN BANK               FUNDS TRANSFER NOTIFICATION                    04-16-2007

ROCCO PAPAPIETRO JR
48 ORANGE AVE
STATEN ISLAND , NY 10302-2038

To: ROCCO PAPAPIETRO JR

This funds transfer was received on 04/16/2007, for $16850.00.
The funds have been CREDITED to account # ***********1247.

Sender:
    Name            : COLONIAL BANK AL
    ABA #           : 063113222
    Reference #     : 070416141638H400
    Received from   :
    By Order Of     : CHAIN OF TITLE LLC

Fed Reference #     : 20070416C1QAE01X00164804161516FT01

Additional Funds Transfer Information:

Beneficiary: ROCCO PAPAPIETRO

Beneficiary Bank:

            * * *

Originator Info: CHAIN OF TITLE LLC

Originator Bank:

Originator Bank Info:

Bank to Bank and all other FRB info fields: {6500}CO-1620NY PAPAPIETRO*

# *EXHIBIT 10*



**Northfield Bank**

1481 FOREST AVE STATEN ISLAND, NY 10302

*************AUTO**5-DIGIT 10314
276 0.5990 AV 0.312   2 1 122
REALTY RECOVERY LLC
1110 SOUTH AVE
STATEN ISLAND NY 10314-3403

For more information about your accounts
Call (718)727-1880

*COMMERCIAL LENDING!*
*Let us help you grow your business!  Visit*
*www.eNorthfield.com or visit a branch for*
*details.  Equal Housing Lender.*

| NONINTEREST BUSINESS | | 001-300494-0 | |
|---|---|---|---|
| REALTY RECOVERY LLC | | | |

*Statement Period 30 Days 04-01-08 Through 04-30-08*

| | | | | |
|---|---|---|---|---|
| Balance as of Apr 01 2008 | | $379,121.44 | | |
| 0 | Additions | $0.00 | | |
| 7 | Subtractions | $308,432.88 | | |
| Balance as of Apr 30 2008 | | $70,688.56 | Service Charge | $0.00 |

*Transactions*

| Date | Description | Additions | Subtractions | Balance |
|---|---|---|---|---|
| 04-01 | Beginning Balance | | | $379,121.44 |
| 04-02 | Fee Wire Transfer T#259 | | $20.00 | |
| 04-02 | Wire Transfer T#259 | | $301,352.46 | |
| 04-02 | Ck1005 - Tr39501499 | | $200.00 | $77,548.98 |
| 04-15 | Countrywide Mortgage | | $9.00 | |
| 04-15 | Countrywide Mortgage | | $9.00 | |
| 04-15 | Countrywide Mortgage | $6,842.40 | $1,814.30 | |
| 04-15 | Countrywide Mortgage | | $5,028.12 | $70,688.56 |
| 04-30 | *Ending Balance* | | | $70,688.56 |

*Checks*

| Ck No. | Amount | Ck No. | Amount | Ck No. | Amount | Ck No. | Amount |
|---|---|---|---|---|---|---|---|
| 1005 | 200.00 | | | | | | |

Page 1 of 2

# *EXHIBIT 11*

Anthony Papapietro
48 Orange Avenue
Staten Island, NY 10302

May 8, 2014

Ocwen Loan Servicing
PO Box 24738
West Palm Beach, FL 33416-4738

**In the Matter of:**        **Anthony Papapietro & Rocco Papapietro**
                             **Loan Number # <u>7130558450</u>**
                             **Property Address:** 342 Hawk Mew Circle
                                                   Greentown, PA 18426

## R.E.S.P.A. QUALIFIED WRITTEN REQUEST

Dear Sir or Madam:

Please treat this letter as a "qualified written request" under the Federal Servicer Act, which is a part of the Real Estate Settlement Procedures Act, 12 U.S.C. 2605(e).

Specifically, we are in dispute as to the identity of the true owner of this debt (if any), and your authority and capacity (if any) to collect on behalf of the same. We are also in dispute about the proper application of payments from the debtors to interest, principal, escrow advances and expenses (in that order of priority as provided for in the loan instruments); about your use of automatically triggered property inspections and broker price opinion charges and fees based on undisclosed accounting for purported arrears; and about legal fees and expenses that have been attached to this account but that have not been otherwise explained or established to the borrower. Specifically, we are requesting the following information:

1.      A complete and itemized LOAN HISTORY from the date of the loan to the date of your response to this letter.

2.      A complete and itemized CALL RECORD HISTORY from the date of the loan to the date of your response to this letter.

3.      A complete and itemized statement of all advances or charges against this loan.

4.      A complete and itemized statement of the escrow account of the loan, if any, from the date of the loan to the date of your response to this letter.

5. Have you purchased and charged to the account any Force-Placed Insurance?

6. A complete and itemized statement from the date of the loan to the date of your response to this letter of the amounts charged for any forced-placed insurance, the date of the charge, the name of the insurance company, the relation of the insurance company to you or a related company, the amount of commission you received for each force-placed insurance event, and an itemized statement of any other expenses related thereto.

7. A complete and itemized statement from the date of the loan to the date of your reply to this letter of any suspense account entries and/or any corporate advance entries related in any way to this loan.

8. A complete and itemized statement from the date of the loan to the date of your reply to this letter of any property inspection fees, property preservation fees, broker opinion fees, appraisal fees, bankruptcy monitoring fees, or other similar fees or expenses related in any way to this loan.

9. Identify the provision under the Mortgage and/or note that authorizes charging each and every such fee against the loan of the debtor.

10. Please attach copies of all property inspection reports and appraisals, broker price opinions of value, bills and invoices, and checks or wire transfers in payment thereof.

11. A complete copy of any key loan transaction report or reports and any reports indicating any charges for any "add on products" sold to the debtors in connection with this loan from the date of the loan to the date of your reply to this letter.

12. A complete and itemized statement of any late charges added to this loan from the date of this loan to the date of your reply to this letter.

13. A complete and itemized statement from the date of the loan to the date of your reply to this letter of any fees incurred to modify, extend, or amend the loan or to defer any payment or payments due under the terms of the loan.

14. An itemized statement of the current amount needed to pay-off the loan in full.

15. The name of any Trust that the loan may be located in.

16. The full name, address and telephone number of the current holder and owner of the original mortgage note including the name, address and phone number of any trustee or other fiduciary. This request is being made pursuant to Section 1641(f)(2) of the Truth In Lending Act, which requires the servicer to identify the holder of the debt.

17. The name, address and telephone number of any master servicers, servicers, sub-servicers, contingency servicers, back-up servicers or special servicers for this mortgage loan.

18.    Is this a MERS Designated Mortgage Loan? If the answer is yes, then identify the electronic MERS number assigned to this loan.

19.    A full, double sided, certified true copy of the original loan documents including the Mortgage, Note and all subsequent assignments.

20. Please provide verification of any notification provided to me of a change in servicer.

**You should be advised that within FIVE (5) DAYS you must send us a letter stating that you received this letter. After that time you have THIRTY (30) DAYS to fully respond as per the time frame mandated by Congress, in "Subtitle 'E' Mortgage Servicing" of the "Dodd-Frank Wall Street Reform and Consumer Protection Act and pursuant to 12 U.S.C. Section 2605(e)(1)(A) and Reg. X Section 3500.21(e)(1).**

TRUTH – IN-LENDING ACT § 131(f)(2)

Pursuant to 15 U.S.C. § 1641 (f):

Please provide the name, address and telephone number of the owner of the mortgage or the master servicer of the mortgage.

**You should be advised that Violations of this Section provide for statutory damages of up to $4,000 and reasonable legal fees. The amendments also clearly provide that the new notice rules are enforceable by private right of action. *15 USC 1641***

Sincerely,

Anthony Papapietro
48 Orange Avenue
Staten Island, NY 10302
P: (718) 448-3971
F: (718) 448-7079
C: (917) 731-1908

December 15, 2014

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
RR # 7014 1200 0000 9561 3120

Green Tree
PO Box 6172
Rapid City, SD 57709-6172

In the Matter of:            **Anthony Papapietro and Rocco Papapietro Jr.**
                             **Loan Number # 82453164 - 4**
                             **Property Address:** 49 Orange Ave
                                          Staten Island, NY 10302-2038

## R.E.S.P.A. QUALIFIED WRITTEN REQUEST

Dear Sir or Ma'am

Please treat this letter as a "qualified written request" under the Federal Servicer Act, which is a part of the Real Estate Settlement Procedures Act, 12 U.S.C. 2605(e).

Specifically, we are in dispute as to the identity of the true owner of this debt (if any), and your authority and capacity (if any) to collect on behalf of the same. We are also in dispute about the proper application of payments from the debtors to interest, principal, escrow advances and expenses (in that order of priority as provided for in the loan instruments); about your use of automatically triggered property inspections and broker price opinion charges and fees based on undisclosed accounting for purported arrears; and about legal fees and expenses that have been attached to this account but that have not been otherwise explained or established to the borrower. Specifically, we are requesting the following information:

1.      A complete and itemized LOAN HISTORY from the date of the loan to the date of your response to this letter.

2.      A complete and itemized CALL RECORD HISTORY from the date of the loan to the date of your response to this letter.

3.      A complete and itemized statement of all advances or charges against this loan.

4.      A complete and itemized statement of the escrow account of the loan, if any, from the date of the loan to the date of your response to this letter.

5.      Have you purchased and charged to the account any Force-Placed Insurance?

6.      A complete and itemized statement from the date of the loan to the date of your response to this letter of the amounts charged for any forced-placed insurance, the date of the charge, the name of the insurance company, the relation of the insurance company to you or a related company, the amount of commission you received for each force-placed insurance event, and an itemized statement of any other expenses related thereto.

7.      A complete and itemized statement from the date of the loan to the date of your reply to this letter of any suspense account entries and/or any corporate advance entries related in any way to this loan.

8.      A complete and itemized statement from the date of the loan to the date of your reply to this letter of any property inspection fees, property preservation fees, broker opinion fees, appraisal fees, bankruptcy monitoring fees, or other similar fees or expenses related in any way to this loan.

9.      Identify the provision under the Mortgage and/or note that authorizes charging each and every such fee against the loan of the debtor.

10.     Please attach copies of all property inspection reports and appraisals, broker price opinions of value, bills and invoices, and checks or wire transfers in payment thereof.

11.     A complete copy of any key loan transaction report or reports and any reports indicating any charges for any "add on products" sold to the debtors in connection with this loan from the date of the loan to the date of your reply to this letter.

12.     A complete and itemized statement of any late charges added to this loan from the date of this loan to the date of your reply to this letter.

13.     A complete and itemized statement from the date of the loan to the date of your reply to this letter of any fees incurred to modify, extend, or amend the loan or to defer any payment or payments due under the terms of the loan.

14.     An itemized statement of the current amount needed to pay-off the loan in full.

15.     The name of any Trust that the loan may be located in.

16.     The full name, address and telephone number of the current holder and owner of the original mortgage note including the name, address and phone number of any trustee or other

fiduciary. This request is being made pursuant to Section 1641(f)(2) of the Truth In Lending Act, which requires the servicer to identify the holder of the debt.

17.     The name, address and telephone number of any master servicers, servicers, sub-servicers, contingency servicers, back-up servicers or special servicers for this mortgage loan.

18.     Is this a MERS Designated Mortgage Loan? If the answer is yes, then identify the electronic MERS number assigned to this loan.

19.     A full, double sided, certified true copy of the original loan documents including the Mortgage, Note and all subsequent assignments.

20. Please provide verification of any notification provided to me of a change in servicer.

**You should be advised that within FIVE (5) DAYS you must send us a letter stating that you received this letter. After that time you have THIRTY (30) DAYS to fully respond as per the time frame mandated by Congress, in "Subtitle 'E' Mortgage Servicing" of the "Dodd-Frank Wall Street Reform and Consumer Protection Act and pursuant to 12 U.S.C. Section 2605(e)(1)(A) and Reg. X Section 3500.21(e)(1).**

TRUTH – IN-LENDING ACT § 131(f)(2)

Pursuant to 15 U.S.C. § 1641 (f):

Please provide the name, address and telephone number of the owner of the mortgage or the master servicer of the mortgage.

**You should be advised that Violations of this Section provide for statutory damages of up to $4,000 and reasonable legal fees. The amendments also clearly provide that the new notice rules are enforceable by private right of action. *15 USC 1641***

Respectfully,

Anthony Papapietro
48 Orange Avenue
Staten Island, NY 10302
P: (718) 448-3971
F: (718) 448-7079
C: (917) 731-1908

September 2, 2015

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
RRR # 7015 0640 0004 4063 1591

Green Tree Servicing, LLC
P.O. Box 6172
Rapid City, SD 57709-6172

**In the Matter of:**          **Anthony Papapietro & Rocco Papapietro Jr.**
                              **Loan Number #824531644**
                              **Property Address:** 49 Orange Ave
                                                   Staten Island, NY 10302-2038

## R.E.S.P.A. QUALIFIED WRITTEN REQUEST

Dear Sir or Madam:

Please treat this letter as a "qualified written request" under the Federal Servicer Act, which is a part of the Real Estate Settlement Procedures Act, 12 U.S.C. 2605(e).

Specifically, we are in dispute as to the identity of the true owner of this debt (if any), and your authority and capacity (if any) to collect on behalf of the same. We are also in dispute about the proper application of payments from the debtors to interest, principal, escrow advances and expenses (in that order of priority as provided for in the loan instruments); about your use of automatically triggered property inspections and broker price opinion charges and fees based on undisclosed accounting for purported arrears; and about legal fees and expenses that have been attached to this account but that have not been otherwise explained or established to the borrower. Specifically, we are requesting the following information:

1.      A complete and itemized LOAN HISTORY from the date of the loan to the date of your response to this letter.

2.      A complete and itemized CALL RECORD HISTORY from the date of the loan to the date of your response to this letter.

3.      A complete and itemized statement of all advances or charges against this loan.

4.      A complete and itemized statement of the escrow account of the loan, if any, from the date of the loan to the date of your response to this letter.

5.      Have you purchased and charged to the account any Force-Placed Insurance?

6.      A complete and itemized statement from the date of the loan to the date of your response to this letter of the amounts charged for any forced-placed insurance, the date of the charge, the name of the insurance company, the relation of the insurance company to you or a related company, the amount of commission you received for each force-placed insurance event, and an itemized statement of any other expenses related thereto.

7.      A complete and itemized statement from the date of the loan to the date of your reply to this letter of any suspense account entries and/or any corporate advance entries related in any way to this loan.

8.      A complete and itemized statement from the date of the loan to the date of your reply to this letter of any property inspection fees, property preservation fees, broker opinion fees, appraisal fees, bankruptcy monitoring fees, or other similar fees or expenses related in any way to this loan.

9.      Identify the provision under the Mortgage and/or note that authorizes charging each such fee against the loan of the debtor.

10.     Please, attach copies of all property inspection reports and appraisals, broker price opinions of value, bills and invoices, and checks or wire transfers in payment thereof.

11.     A complete copy of any key loan transaction report or reports and any reports indicating any charges for any "add on products" sold to the debtors in connection with this loan from the date of the loan to the date of your reply to this letter.

12.     A complete and itemized statement of any late charges added to this loan from the date of this loan to the date of your reply to this letter.

13.     A complete and itemized statement from the date of the loan to the date of your reply to this letter of any fees incurred to modify, extend, or amend the loan or to defer any payment or payments due under the terms of the loan.

14.     An itemized statement of the current amount needed to pay-off the loan in full.

15.     The name of any Trust that the loan may be located in.

16.     The full name, address and telephone number of the current holder and owner of the original mortgage note including the name, address and phone number of any trustee or other fiduciary. This request is being made pursuant to Section 1641(f)(2) of the Truth In Lending Act, which requires the servicer to identify the holder of the debt.

17.    The name, address and telephone number of any master servicers, servicers, sub-servicers, contingency servicers, back-up servicers or special servicers for this mortgage loan.

18.    Is this a MERS Designated Mortgage Loan? If the answer is yes, then identify the electronic MERS number assigned to this loan.

19.    A full, double sided, certified true copy of the original loan documents including the Mortgage, Note and all subsequent assignments.

20. Please, provide verification of any notification provided to me of a change in servicer.

**You should be advised that within FIVE (5) DAYS you must send us a letter stating that you received this letter. After that time you have THIRTY (30) DAYS to fully respond as per the time frame mandated by Congress, in "Subtitle 'E' Mortgage Servicing" of the "Dodd-Frank Wall Street Reform and Consumer Protection Act and pursuant to 12 U.S.C. Section 2605(e)(1)(A) and Reg. X Section 3500.21(e)(1).**

### TRUTH – IN-LENDING ACT § 131(f)(2)

Pursuant to 15 U.S.C. § 1641 (f):

Please provide the name, address and telephone number of the owner of the mortgage or the master servicer of the mortgage.

**You should be advised that Violations of this Section provide for statutory damages of up to $4,000 and reasonable legal fees. The amendments also clearly provide that the new notice rules are enforceable by private right of action. *15 USC 1641***

Sincerely,

Anthony Papapietro
48 Orange Avenue
Staten Island, NY 10302
P: (718) 448-3971
F: (718) 448-7079
C: (917) 731-1908

Anthony Papapietro
48 Orange Ave
Staten Island, NY 10302-2038


October 12, 2015


Ditech Financial LLC
P.O. Box 6172
Rapid City, SD 57709-6172

Re: Account Number 82453164-4; Rocco Papapietro Jr. and Anthony Papapietro

To whom it may Concern,

I am writing in response to a letter dated October 7, 2015; in that letter, you ask for information pertaining the above account number. In order for you understand the circumstances, I must start from the beginning.

In April & July of 2007, Rocco Papapietro Jr. Anthony Papapietro and Joseph Papapietro were involved in a scheme constructed by Michael Howard Clott and involved many other. This scheme took loans out on three (3) homes, 342 Hawk Mew Circle, Lake Ariel, PA 18436, 49 Orange Ave, Staten Island, NY 10302-2038, and 62 Tabb Place, Staten Island, NY 10302-2038. The signing mortgage is voidable because Joseph Papapietro was listed as the seller of the property, which is impossible considering Joseph relinquished all interest in the properties in November of 2000.

I agreed to mortgage certain properties at the behest of his brother, Rocco Papapietro, "Rocco" who was going into the business of purchasing distressed and "upside down" homes. The purpose of this was to show the other investors in the business that plaintiff's brother; Rocco invested in the business. On April 13, 2007, 342 Hawk Mew Circle, Greentown, PA 18426 was mortgages for $120,750.00 at 8.25% per annum, with a monthly payment due of $907.15. Carnegie Mortgage, LLC, brokered the loan. D/B/A Liberty Home Mortgage a New Jersey Limited Liability Company, which employed one of the brokers, Joe Schlamowitz. On July 10, 2007, 49 Orange Avenue, Staten Island, NY 10302, was mortgaged for $364, 000, at 7.375% per annum. This resulted in a monthly payment of $2,514.06. The loan was also brokered by Carnegie Mortgage LLC. The Hawk Mew loan was sold to Countrywide, the day of the closing; then was bought by Bank of America when Bank of America purchased Countrywide Home loans. Bank of America recently transferred it to Ocwen Loan Servicing. The Orange Avenue loan was sold first to Countrywide, the day of the closing; then (soon after) to Bank of America. Bank of America recently transferred it to Ocwen. Rocco and I were assured that we could rescind the loans by the real estate investment company's attorney, Bjorn Koritz.

## 15 U.S. Code § 1635 - Right of rescission as to certain transactions:

**[a] Disclosure of obligor's right to rescind:**

Except as otherwise provided in this section, in the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Bureau, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Bureau, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Bureau, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

**[b] Return of money or property following rescission:**

When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

**[c] Rebuttable presumption of delivery of required disclosures:**

Notwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this subchapter by a person to whom information, forms, and a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof.

**[d] Modification and waiver of rights:**

The Bureau may, if it finds that such action is necessary in order to permit homeowners to meet bona fide personal financial emergencies, prescribe regulations authorizing the modification or waiver of any rights created under this section to the extent and under the circumstances set forth in those regulations.

*[e] Exempted transactions; reapplication of provisions*:

This section does not apply to—

[1] A residential mortgage transaction as defined in section 1602(w) [1] of this title;

[2] A transaction which constitutes a refinancing or consolidation (with no new advances) of the principal balance then due and any accrued and unpaid finance charges of an existing extension of credit by the same creditor secured by an interest in the same property;

[3] A transaction in which an agency of a State is the creditor; or

[4] Advances under a preexisting open-end credit plan if a security interest has already been retained or acquired and such advances are in accordance with a previously established credit limit for such plan.

[f] Time limit for exercise of right
An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor, except that if (1) any agency empowered to enforce the provisions of this subchapter institutes a proceeding to enforce the provisions of this section within three years after the date of consummation of the transaction, (2) such agency finds a violation of this section, and (3) the obligor's right to rescind is based in whole or in part on any matter involved in such proceeding, then the obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the earlier sale of the property, or upon the expiration of one year following the conclusion of the proceeding, or any judicial review or period for judicial review thereof, whichever is later.

[g] Additional relief:
In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.

[h] Limitation on rescission:
An obligor shall have no rescission rights arising solely from the form of written notice used by the creditor to inform the obligor of the rights of the obligor under this section, if the creditor provided the obligor the appropriate form of written notice published and adopted by the Bureau, or a comparable written notice of the rights of the obligor, that was properly completed by the creditor, and otherwise complied with all other requirements of this section regarding notice.

[i] Rescission rights in foreclosure:

[1] In general: Notwithstanding section 1649 of this title, and subject to the time period provided in subsection (f) of this section, in addition to any other right of rescission available under this section for a transaction, after the initiation of any judicial or nonjudicial foreclosure process on

the primary dwelling of an obligor securing an extension of credit, the obligor shall have a right to rescind the transaction equivalent to other rescission rights provided by this section, if—

[A] A mortgage broker fee is not included in the finance charge in accordance with the laws and regulations in effect at the time the consumer credit transaction was consummated; or
[B] the form of notice of rescission for the transaction is not the appropriate form of written notice published and adopted by the Bureau or a comparable written notice, and otherwise complied with all the requirements of this section regarding notice.

[2] Tolerance for disclosures
Notwithstanding section 1605(f) of this title, and subject to the time period provided in subsection (f) of this section, for the purposes of exercising any rescission rights after the initiation of any judicial or nonjudicial foreclosure process on the principal dwelling of the obligor securing an extension of credit, the disclosure of the finance charge and other disclosures affected by any finance charge shall be treated as being accurate for purposes of this section if the amount disclosed as the finance charge does not vary from the actual finance charge by more than $35 or is greater than the amount required to be disclosed under this subchapter.

[3] Right of recoupment under State law
Nothing in this subsection affects a consumer's right of rescission in recoupment under State law.

[4] Applicability
This subsection shall apply to all consumer credit transactions in existence or consummated on or after September 30, 1995.

Upon hearing, that Rocco tried to rescind the loans, several parties who were both paradoxically interested parties and who owed a fiduciary duty to the plaintiff moved to ensure that the loans were funded, against the wishes of Rocco and I. The banks failed to heed the wishes of the obligor/rescission. When Rocco moved to rescind the loans, having thought better of taking them out, the bank contacted the mortgage brokers involved. After the loans were funded, that same business partner (Michael Clott) illegally wrote checks against Rocco's account and transferred the proceeds from the wrongly funded loans to accounts he controlled. The banks failed to do any of the due diligence that is part of what banks do when problems with the loan processes arose. At present, are being forced to repay mortgages that he tried to rescind and the fruits of which were converted to the usage of a con artist.

Everhome took over the 49 Orange Ave loan from Bank of America and Green Tree Mortgage took it over from them. Ocwen Home Loans took over the 342 Hawk Mew Circle loan. After refiling for a lower mortgage rate with Ocwen Home Loans in December 2014, and being accepted to make payments of $473.80 during a trial period. I received a notification letter dated February 20, 2015; I was to start making payments on April 1, 2015 for $474.60. I was instructed to return the agreement no later than March 6, 2015, which I did. Then in a notification dated June 17, 2015 from Ocwen, they state I am in arrears from January 1, 2015 – June 1, 2015, the unpaid amounts of $1,192.83 a month. I have been trying to get in touch with the representative they assigned me, but every time I call, I leave a message and no one calls me back.

Joseph Papapietro relinquished all the rights to the properties owned by Anthony, Rocco Jr. and Joseph in November of 2000 and so ordered by The Honorable Joseph J. Maltese Justice of the Supreme Court of Richmond County, in the State of New York. He should have not been able to sign any documents in April of 2007. Furthermore, Joseph Papapietro is **Bipolar/Schizophrenic** and should not been allowed to sign any legal documents.

My brother retained an attorney to help me with this problem in 2009 and a settlement agreement with the defendant Michael Howard Clott for the money he swindled from us. Mr. Clott stopped making the agreed upon payments and was convicted soon thereafter.  If the three loans rescinded back in 2007, how am I still liable for them? Would not these loans be considered void, and should not the original loans go into effect?

342 Hawk Mew Circle, Lake Ariel, PA 18436, 49 Orange Ave, Staten Island, NY 10302-2038, and 62 Tabb Place, Staten Island, NY 10302-2038 are currently part of a Civil Lawsuit in the State of New York: Index No. TS-300254-10/NY. Moreover, the loan on 342 Hawk Mew Circle and 62 Tabb Place, Staten Island, NY 10302-2038 were rescinded in April of 2007, the 49 Orange avenue, Staten Island, NY 10302-2028  house was rescinded on July 10, 2007.

 I released attorney Norah Hart, ESQ., in 2013 and hired another attorney, Irina Kushel, ESQ., to take over the case, she immediately went after the Promissory Note for twenty-five million dollars ($25,000,000) and went after the bank account of Mr. Clott and all the parties involved.

I recently sent "Qualified Written Request" to all four (4) companies to find out if either of them actually owns the loans. However, they refuse to comply, ever though under the Federal Servicer Act, which is part of the ***Real Estate Settlement Act, 12 U.S.C. 2605(e).***

I also recently sent Fannie Mae a "Qualified Written Request" QWR; they have not produced proof of the loan either. However, they did say the loan is in a trust; I have no idea what this mean. I know the owner does not service loans; I am just trying to figure why no matter to I whom I talk to, I cannot get a straight answer and I am just trying to figure out who has these loans. Under the obligation of the lenders laws they are required to respond to the mortgagee if they send a "Qualified Written Request" QWR.

### (e) Duty of loan servicer to respond to borrower inquiries
### [i] Notice of receipt of inquiry

#### [A] In general

If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

**[B] Qualified written request**

For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—

> [i] Includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> [ii] Includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

You have requested all relevant documents pertaining to the case history, I am including them is in this correspondence for your review. I am sure you will see how this loan in particular (82453164-4) 342 Hawk Mew Circle, Lake Ariel, PA 18436, was funded and subsequently rescinded by Rocco Papapietro and was guaranteed to be rescinded by Bjorn Koritz and Michael Howard Clott. Unfortunately, no one seems to understand that this loan should not have been allowed and should have been voided out immediately under the rescission laws of TILA.

## THE TRUTH AND LENDER ACT (TILA)

*The Truth in Lending Act (TILA)* contained in Title I of the Consumer Credit Protection Act is a federal law enacted on May 29, 1968 that protects consumers in their dealings with lenders and creditors. The Act mandates that credit and charge card companies disclose their interest rates and other information about an account to the borrower before processing the loan. The information required to be revealed under the Act includes the terms of the loan, the total amount of the loan, the annual interest rate and the number, amount and due dates of all payments for repayment of the loan. The Truth in Lending Act was implemented by the Federal Reserve through a series of regulations. TILA applies to most types of credit, whether it be closed-end credit (such as an auto loan or mortgage), or open-ended credit (such as a credit card). Though TILA requires additional disclosures and places many restrictions on mortgages, with the exception of certain high-cost mortgage loans that are subject to the requirements of, *§226.32*, and home equity plans that are subject to the requirements of, *§226.5b*, TILA does not regulate the charges that may be imposed for consumer credit.

The TILA, implemented by Regulation Z **[12 CFR 226]**, became effective on July 1, 1969. "Regulation Z", the regulations implementing TILA is codified at **12 CFR Part 226**. Most specific requirements imposed by TILA are found in Regulation Z, and therefore a reference to the requirements of TILA usually refers to the requirements contained in Regulation Z, as well as the statute itself.

From time to time, amendments to the Act brought about changes to TILA. The amendments of 1995 dealt primarily with tolerances for real estate secured credit. Regulation Z was amended on September 14, 1996 to incorporate changes to the TILA that limit lenders' liability for disclosure errors in loans secured by real estate and consummated after September 30, 1995. An amendment to TILA in 1970 prohibited unsolicited credit cards. Additional major amendments to the TILA and Regulation Z were made by the Fair Credit Billing Act of 1974, the Consumer

Leasing Act of 1976, the Truth in Lending Simplification and Reform Act of 1980, the Fair Credit and Charge Card Disclosure Act of 1988, the Home Equity Loan Consumer Protection Act of 1988, the Home Ownership and Equity Protection Act of 1994, the TILA Amendments of 1995, and the, *Economic Growth and Regulatory Paperwork Reduction Act of 1996 (EGRPRA). By 73 Fed. Reg. 44522,* dated July 30, 2008, the final rules amending Regulation Z, **12 CFR part 226,** which implements the **Truth in Lending Act and Home Ownership and Equity Protection Act,** effective on October 1, 2009 was published.[i]

The ultimate aim of TILA is to protect consumers in their dealings with lenders and creditors and to ensure that consumers are aware of the terms and costs of credit.[ii] This will help the consumer compare different loans and help them in settling for the best. TILA requires that consumers must be provided with a written disclosure of the costs associated with a mortgage loan, such as Annual Percentage Rate (APR), finance charges, and annual fees. Also known as Regulation Z, TILA gives consumers the right to cancel certain credit transactions that involve a lien on the consumer's principal dwelling.[iii]

Though each state has its own variations of TILA, the most important feature of TILA remains the proper disclosure of key information to protect both the consumer and the lender in credit transactions.

*[i] 15 USCS Appx 12 CFR prec § 226.1*

*[ii] 15 USCS Appx 12 CFR § 226.1*

*[iii] Id*

I am sending all the relevant information per your requests pertaining to this case, I hope you will review the documents and understand that with this case still being in litigation no decision can be reach. Moreover, the switching of servicing companies and mortgage companies has not help the case; it is actually hindering the process.

I hope you will understand how complex this case has become, my reasoning for fighting so strongly to correct this matter, I was a victim in this case and I feel after all is said, and done I will granted the original loan before all of this happened.

If you have any questions please do not hesitate to contact me. I thank you in advance and I am looking forward to hearing from you and hopefully we can come to and understanding.


Respectfully,


_____

Anthony Papapietro

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
RRR #7015 0640 0004 4063 6985

Fannie Mae (Federal National Mortgage Association)
3900 Wisconsin Avenue, NW
Washington, DC 20016-2892

November 6, 2015

> **Re:** Anthony Papapietro
> Loan Number #82453164 - 4
> Property Address: 49 Orange Avenue
> Staten Island, NY 10302-2038

Thank you for taking my correspondence on this matter. My reason for writing to you is to find the underlying cause of this problem I am having. I am trying to figure out why this loan was never rescinded and has been transferred repeatedly. I have also requested proof of the actual loan however; no one seems to be able to provide it. I have been told by your organization that it is in some type of trust.

My name is Anthony Papapietro agreed to mortgage certain properties at the behest of my brother, Rocco Papapietro, (referred to hereinafter as "Rocco") who was going into the business of purchasing distressed and "upside down" homes. The purpose of this was to show the other investors in the business that plaintiff's brother; Rocco invested in the business. This employed one of the brokers, referred to hereafter, Joe Schlamowitz. On July 10, 2007, 49 Orange Avenue, Staten Island, NY 10302, was mortgaged for $364, 000, at 7.375% per annum. This resulted in a monthly payment of $2,514.06. Carnegie Mortgage LLC, D /B /A Liberty Home Mortgage a New Jersey Limited Liability Company brokered the loan.

Upon hearing, that Rocco tried to rescind the loans, several parties who were both paradoxically interested parties and who owed a fiduciary duty to the plaintiff moved to ensure that the loans were funded, against the wishes of Rocco and I. The banks failed to heed the wishes of the obligor/rescission. When Rocco moved to rescind the loans, having thought better of taking them out, the bank contacted the mortgage brokers involved. After the loans were funded, that same business partner (Michael Clott) illegally wrote checks against Rocco's account and transferred the proceeds from the wrongly funded loans to accounts he controlled. The banks failed to do any of the due diligence that is part of what banks do when problems with the loan processes arose. At present, we are being forced to repay mortgages that he tried to rescind and the fruits of which were converted to the usage of a con artist.

Everhome took over the 49 Orange Ave loan from Bank of America and Green Tree Mortgage took it over from them. Now Ditech Financial LLC has taken over the loan and is trying to collect on a debt where no one can show proof of the loan. Moreover, I Anthony Papapietro have been making the payments and have hired the attorneys on this case, I have been fighting to set the record straight all this time.

This case is pending and I am trying to explain this to these servicing companies that keep buying and transferring this loan this and three other loans were part of a scheme perpetrated by Michael Clott who subsequently stole the money and I Anthony Papapietro am left to be held responsible. This loan should have never been funded, should have been rescinded and should have reverted to the original loan before this happened.

I am not looking to refinance or a loan modification, I am looking for this loan to be rescinded, as it should have been on July 10, 2007.

I thank you for your immediate attention on this and I am looking forward to hearing from someone soon.

Respectfully,

Anthony Papapietro
48 Orange Avenue
Staten Island, NY 10302-2038

November 16, 2015

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
RRR 7015 0640 0004 4063 6992

Fannie Mae (Federal National Mortgage Association)
3900 Wisconsin Avenue, NW
Washington, DC 20016-2892

In the Matter of:        Anthony Papapietro
Loan Number: 7130558450
Property Address:  8 Hawk Mew
Salem Township, PA 18426

Dear Sir/Madam,

My name is Anthony Papapietro I have been trying to figure out whom actually, owns the loan for the above referred loan number, I have written to the servicing company Ocwen Loan Servicing and they tell me your organization own the loan. I have written to you on this matter but I still have not heard back from you.

I am sending you another Qualified Written Request "QWR"  with regards to this specific loan I would appreciate it if someone could respond in a timely matter.

Thank you I look forward to hearing from someone soon.

Respectfully,

Anthony Papapietro
48 Orange Avenue
Staten Island, NY 10302
P: (718) 448-3971
F: (718) 448-7079
C: (917) 731-1908

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
RRR # 7015 0640 0004 4063 7029

November 19, 2015

Ocwen Loan Servicing, LLC
P.O. Box 24738
West Palm Beach, FL 33416-4738

**Re: Anthony Papapietro Loan Number #7130558450 Property Address:  8 Hawk Mew
    Salem, PA 18426**

Dear Sir/Madam,

Thank you for taking my correspondence. I am writing to you to find out finally who actually
own this loan. I have been given the run around for some time now, in your most recent
correspondence you stay that Bank of America owns the loan. However, in previous
correspondence you state that it is in a trust with Fannie Mae, which one is it?

 I have owned this property since the early 1990's; unfortunately, I was a victim of an elaborate
scheme in April, and July of 2007, perpetrated by Michael Howard Clott and by many others,
Michael Clott was subsequently incarcerated for this scheme.  These loans were rescinded within
the three day (3) period so technically it should revert to the original loan holder. I should not be
held liable for the erroneous activities of Mr. Clott and his partners. Moreover, this property has
been transferred so many times I can never get a straight answer from anyone and each time it is
transferred, I have to explain the circumstances all over again. When someone can show me the
original loan, I have to question the validity of your claim that you have the loan.

Furthermore, while this case against the perpetrators, which include many others, is still in
litigation, I cannot comply with your requests. **Show me the original loan**.

I am looking forward to hearing from someone on this very serious matter if you have any
questions do not hesitate to contact me.


Regards,

Anthony Papapietro
48 Orange Avenue
Staten Island, NY 10302

Anthony Papapietro
48 Orange Ave
Staten Island, NY 10302-2038


December 28, 2015


Ditech Financial LLC
P.O. Box 6172
Rapid City, SD 57709-6172

    Re: Account Number 82453164-4; Rocco Papapietro Jr. and Anthony Papapietro

To whom it may Concern,

I would like to thank you for responding to me. I need to clarify something up though, in my letter dated October 12, 2015, I explained to your company the situation with this account at no point did I mention that there was a forgery.

Nor did I mention a forgery in the letter dated November 6, 2015 either. To which you referred to in your response letter. The crux of the entire situation stems from an elaborate scheme perpetrated by Michael Howard Clott and his partners. So please check your records and get back to me when someone can explain to me why this loan is still being transferred and why someone is trying to collect on it, when it was rescinded within the three (3) day rescission period allowed according to the Truth And Lender Act (TILA).

I thank you for your cooperation on this matter and I look forward to hearing from someone soon.

Respectfully,

Anthony Papapietro

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
RRR # 7015 0640 0004 4062 6979

December 29, 2015

Shellpoint Mortgage Servicing
Customer Service
PO Box 10826
Greenville, SC 29603-0826

Re: Anthony Papapietro Loan Number #7130558450 Property Address:  8 Hawk Mew
     Salem, PA 18426

Dear Sir/Madam,

Thank you for taking my correspondence. I am writing to you to find out finally who actually own this loan. I have been given the run around for some time now, in your most recent correspondence you stay that Bank of America owns the loan. However, in previous correspondence you state that it is in a trust with Fannie Mae, which one is it?

 I have owned this property since the early 1990's; unfortunately, I was a victim of an elaborate scheme in April, and July of 2007, perpetrated by Michael Howard Clott and by many others, Michael Clott was subsequently incarcerated for this scheme.  These loans were rescinded within the three day (3) period so technically it should revert to the original loan holder. I should not be held liable for the erroneous activities of Mr. Clott and his partners. Moreover, this property has been transferred so many times I can never get a straight answer from anyone and each time it is transferred, I have to explain the circumstances all over again. When someone can show me the original loan, I have two (2) questions the validity of your claim that you have the loan.

Furthermore, while this case against the perpetrators, which include many others, is still in litigation, I cannot comply with your requests. Show me the original loan.

I am looking forward to hearing from someone on this very serious matter if you have any questions do not hesitate to contact me.

Regards,

Anthony Papapietro
48 Orange Avenue
Staten Island, NY 10302

Anthony Papapietro
48 Orange Avenue
Staten Island, NY 10302-2038


December 29, 2015


Ocwen Loan Servicing, LLC
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409

Re: Loan No. 7130558450, 8 Hawk Mew Salem Township, PA 18426

Dear Sir/Madam,

I have written to you before about this loan and I informed you of the situation but for some reason you refuse to accept that I was a victim of an elaborate scheme perpetrated by the infamous Michael Howard Clott.

I Anthony Papapietro along with my brother Rocco were victimized. On April 13, 2007 Carnegie Mortgage, LLC, took out a loan, the loan was rescinded 3 days later by me. I have been in litigation since trying to clear up this matter. The loan was then transferred to Countrywide Home Loan and bought by Bank of America when Bank of America purchased Countrywide. On August 8, 2012 Ocwen Loan Servicing, LLC. This case is still pending in the judicial system and I am trying to get the monies stolen from me back.

In a letter dated December 15, 2015, your company stating you will no longer be servicing this loan and I should contact Shellpoint Mortgage Servicing. With your actions transferring this loan to them I now have to start all over and explain this entire situation to them and start fighting with them, frankly this in nonsense.


Respectfully,

Anthony Papapietro

Anthony Papapietro
48 Orange Ave
Staten Island, NY 10302-2038


January 18, 2016

Ditech Financial LLC
P.O. Box 6172
Rapid City, SD 57709-6172

Re: Account Number 82453164-4; Anthony Papapietro and Rocco Papapietro Jr.

Thank you for responding to my correspondence. I have explained to you that this house was part of a scheme perpetrated by the infamous Michael Howard Clott and was rescinded within the three (3) day rescission period by Bjorn Koritz, Esq.

There was a settlement reached on June 5, 2009, by and between me, my brother and the defendants. Mr. Clott made a few payment but failed to honor the settlement after he stopped making payment in December 0f 2009. Therefore, I refiled the case shortly thereafter.

This case is still in litigation and no ruling has been determined as of yet. I am sending you a copy of the rescission dated July 10, 2007 at 5pm, and as you will see, Mr. Koritz signed the bottom of the document and told me not to worry about anything. However, this was not the case and has caused this problem for me and my brother (Rocco Papapietro Jr.).

I have also explained that I (Anthony Papapietro) hold two-third (2/3) majority with this and all matters when it comes to the houses owned. This has been the case since November 2000, when my brother Joseph Papapietro was diagnosed as **Bipolar/Schizophrenic**.

If you have any questions please do not hesitate to contact me directly either by mail or you can give me a call. I can be between the hours of 7am - 8pm, Eastern Standard Time, seven-days a week.

I am looking forward to hearing from someone on this matter and hope it can be resolved expeditiously.


Regards,

Anthony Papapietro
48 Orange Avenue
Staten Island, NY 10302
P: (718) 448-3971
F: (718) 448-7079
M: (917) 731-1908

Anthony Papapietro
48 Orange Avenue
Staten Island, NY 10302


January 21, 2016


Shellpoint Mortgage Servicing
Customer Service
PO Box 10826
Greenville, SC 29603-0826

Re: Anthony Papapietro Loan Number #0570219027 Property Address:  8 Hawk Mew
      Salem, PA 18426

Thank you for taking my correspondence concerning the above referred loan. I am responding to a correspondence dated January 13, 2016, which I received on January 20, 2016. In this correspondence, you are requesting information about a modification. You also sent information pertaining to Dodd-Frank Certification. However, I am not requesting a modification, but I will provide you with the information related in this ongoing case.

I have written you within the last weeks giving you pertinent information to the situation that was the crux of this ordeal. Now you are asking me to comply with Dodd-Frank laws, which were not even in place when this well thought out scheme and later pulled of, ergo the Dodd-Frank laws should not be relevant.

In April 2007, my brother and I were **"VICTIMS"** of an elaborate scheme perpetrated by the infamous Michael Howard Clott and his partners. They asked my brother to show he was invested in a company, and then persuaded him to remortgage three (3) of our homes, one (1) was the property at 8 Hawk Mew, Salem Township, PA 18426. This property was subsequently rescinded within the three (3) day rescission period by Bjorn Koritz Esq.

In 2008, we retained an attorney (Norah Hart Esq.) of Treuhaft and Zakarin, LLP. In 2010, a case was brought the case into Civil Court, the Eastern District of New York State. A Settlement was finally reached between Michael Clott and he agreed to make payments starting in June of 2010, but he stopped making the agreed payments in December of that same year. Mr. Clott's actions constitute a Breach of Agreement. Then we took Mr. Clott back into Court for the full amount he stole from us, we later changed attorneys in 2013, Mrs. Irina Kushel became the lead attorney and automatically went after the Promissory Note of $25,000,000.


This case is still in litigation as I explained in my previous correspondence. Moreover, the switching of the loan over the years has become very annoying to be honest, but if you would like I will play along until the next servicing company takes over the loan from you.

Thank you again for taking my correspondence and I look forward to hearing from someone very soon.

Regards,

Anthony Papapietro
48 Orange Avenue
Staten Island, NY 10302
P: (718) 448-3971
F: (718) 448-7079
C: (917) 731-1908

Anthony Papapietro
48 Orange Avenue
Staten Island, NY 10302

June 28, 2016

Shellpoint Mortgage Servicing
Customer Service
PO Box 10826
Greenville, SC 29603-0826

Re:   Property Address: 342 Hawk Mew, Salem Township, PA 18426
      Current Owner: Bank of America
      Original Creditor: Carnegie Mortgage, LLC D/B/A Liberty Home
      Referred/Loan No: 0570219027, Mortgage, a Limited Liability Company

Dear Sir/Madam,

Thank you for your response to my correspondence dated May 25, 2016. I am writing to respond to your reply dated June 23, 2016. In your response, you seem to be missing and clearly are misconstruing many facts about the so-called mortgage, and promissory note. **So let me explain this to you one more and final time.**

In your June 23, 2016, letter you state that there is a promissory note, which makes me responsible for the loan, which is **"absolutely untrue"**. My brothers Joseph, Rocco Jr., and I purchased a vacation home in Salem Township, Pennsylvania in [note: put in original purchase date]. A few years later in [February 1997], my brother Rocco Jr. was incarcerated and soon after in [November 2000] my brother Joseph conveyed his rights to the property to my father and me. After his release from prison Rocco Papapietro, got involved with the infamous Michael H. Clott, formerly Chairman and Chief Executive Officer of the bankrupt **First American Mortgage Company, Inc., "FAMCO".** See **EF Hutton Mortg. Corp. v. Pappas, 690 F. Supp. 1465 (D. Md. 1988) U.S. District Court for the District of Maryland - 690 F. Supp. 1465 (D. Md. 1988) June 28, 1988.**

http://law.justia.com/cases/federal/district-courts/FSupp/690/1465/2359411/

https://www.courtlistener.com/opinion/1474860/ef-hutton-mortg-corp-v-equitable-bank-na/

Soon after the release of Rocco Papapietro Jr., in 2006, Michael Howard Clott contacted Rocco Jr., and convinced him to come aboard Mr. Clott's new company " **NATIONAL REALTY RECOVERY" also " NATIONAL REALTY FUND/ NATIONAL MORTGAGE RECOVERYGROUP/ REALTY RECOVERY LLC.** Mr. Clott promised Rocco Papapietro Jr. a lot of money for very little work, all Rocco had to do was show he was invested in the new business. Unbeknownst to Rocco and Anthony the plan of Mr. Clott was already in the works to steal the money from the houses Rocco and Anthony showed they owned.

On April 13, 2007, 342 Hawk Mew Circle, Greentown, PA 18426 was mortgages in the amount of $120,750.00 at 8.25% per annum, with a monthly payment due of $907.15. The loan was brokered by Carnegie Mortgage, which employed one of the brokers. The Hawk Mew loan was sold to Countrywide Home Loans, the day of the closing; then transferred to Bank of America, when Bank of America bought Countrywide Home Loans on January 11, 2008.  Bank of America recently transferred it to Ocwen Loan Servicing, Rocco and I had been assured that he could rescind the loans by the real estate investment company's attorney, Bjorn Koritz.

Upon hearing that Rocco tried to rescind the loans, several parties who were both paradoxically interested parties and who owed a fiduciary duty to my brother and I, moved to ensure that the loans were funded, against the wishes my brother and I. The banks failed to heed the wishes of the obligor/rescinder. When Rocco Jr. and I moved to rescind the loans, having thought better of it, the bank contacted the mortgage brokers involved.

**The Court held that the statutory language is unequivocal.**

*"The language leaves no doubt that rescission is effected when the borrower notifies the creditor of his intention to rescind," Justice Scalia wrote. "It follows that, so long as the borrower notifies within three years after the transaction is consummated, his rescission is timely. The statute does not also require him to sue within three years."*

*The Court rejected the bank's interpretation of Section 1635(f) that written notice does not suffice if the parties dispute the adequacy of the disclosures and thus the continued availability of the right to rescind.*

*"Although Section 1635(f) tells us when the right to rescind must be exercised, it says nothing about how that right is exercised," the justices explained. "Section 1635(f) nowhere suggests a distinction between disputed and undisputed rescissions, much less that a lawsuit would be required for the latter."*

*Language in Section 1635(g) allowing courts to "award relief" "in addition to rescission" simply makes clear that a court has options when fashioning remedies for borrowers, Justice Scalia said, and has "no bearing" on whether and how rescission under Section 1635(a) may occur.*

*Invoking common law, the bank also argued that rescission traditionally required that the rescinding party return what he received before a rescission could be affected or that a court affirmatively decree rescission. Although TILA disclaimed the former, "the negation of rescission-at-law's tender requirement hardly implies that the Act codifies rescission in equity," the Court said.*

*"The clear import of Section 1635(a) is that a borrower need only provide written notice to a lender in order to exercise his right to rescind," the justices concluded. "To the extent Section 1635(b) alters the traditional process for unwinding such a unilaterally rescinded transaction; this is simply a case in which statutory law modifies common-law practice."*

Koritz said directly to Rocco that the loans could be rescinded, by simply inscribing along the top of the notice "Rescinded, with the (name), and date" and then sending them to him so that he could forward them to the bank. Koritz gave this information fully aware that this was not idle conjecture but that the advice would immediately be acted upon; this clearly creates a fiduciary duty on his part. Moreover, Koritz was the attorney for the company that Rocco and Clott started. He was compensated by receiving a portion of the business, in March 2007. He was to receive 3% of the business as compensation for his role as attorney; as such, he absolutely and definitely owed a fiduciary duty to the plaintiff.

As a rule, in New York, an attorney owes his client a fiduciary duty. *See, Graubard Mollen Dannett & Horowitz v. Moskovitz, 86 N.Y.2d 112, 653 N.E.2d 1179, 1182, 629 N.Y.S.2d 1009 (N.Y. 1995)*

("[A]n attorney stands in a fiduciary relation to the client."). In addition to the well-established rule articulated supra, the behavior that confers the fiduciary duty is present; the giving of advice upon which the attorney knew action would be taken, despite the fact that there was no written retainer agreement between Anthony and Koritz. As such, both by virtue of his position as attorney for the Clott-Rocco project and his giving legal advice that he knew would be relied upon, there is a two-pronged conferral of fiduciary duty on the attorney. Aiding and abetting Koritz in violating his duty is the first prong of the bank's liability.

https://www.manatt.com/insights/newsletters/financial-services-law/borrowers-need-not-file-suit-to-rescind-mortgage-l

http://www.forbes.com/sites/danielfisher/2013/02/07/court-decision-gives-borrowers-an-ace-in-the-hole-lenders-a-headache/#1f6718311000

In addition to the fiduciary duty owed by Bjorn Koritz to the plaintiff, the mortgage broker involved in mortgaging the houses owed both brothers a similar duty. It is well established in New York that mortgage brokers owe their clients fiduciary duty. Please See, *Langer v. Haber Mortgages, Ltd., N.Y. L.J., Aug. 2, 1995, at 26, col. 4.* Additionally, the Court of Appeals has held, in crystalline terms that all who hold themselves out as brokers owe the clients they are working on the behalf of a fiduciary duty. *In Sonnenschein v. Douglas Elliman-Gibbons & Ives, the Court of Appeals* dealt with the "preliminary question" of "whether defendants had a broker/principal relationship that gives rise to an obligation to act as fiduciaries." The high court wrote, in Sonnenschein, "In determining the existence of a broker/principal relationship – with its concomitant fiduciary obligations – courts must review the particular communications and agreements between the parties under the circumstances presented."

Here, two brokers were involved. Christian DiPretoro and Joe Schlamowitz expressly assumed the role(s) of broker; both were actively involved in the effort to obtain mortgages on the properties in questions. "In New York it is well settled that a real estate broker is a fiduciary with a duty of loyalty and an obligation to act in the best interests of the customer." See *Mr. Dubbs v. Stribiling & Associates (Appellate Division, 1st Department, and July 27, 2000).*

Moreover, while DiPretoro and Schlamowitz were not a real estate brokers, it is not the "real estate" part of the title that is important for fiduciary duty purposes, but the "broker" part. In ***The People of the State of New York v. Coventry First LLC (2008 NY Slip Op 05548 [52 AD3d 345] [52 AD3d 345] June 17, 2008 Appellate Division***, First Department), the Appellate Division fleshes out further what are the parameters of fiduciary relationships (as a general concept), saying that "A fiduciary relationship 'exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.' It exists only when a person reposes a high level of confidence and reliance in another, who thereby exercises dominance and control over him." It is axiomatic that a broker owes a duty of good faith and loyalty to his principal ***See, Northeast Gen. Corp. v. Wellington Advertising, 82 N.Y.2d 158, 164, 604 N.Y.S.2d 1, 624 N.E.2d 129; Wendt v. Fischer, 243 N.Y. 439, 443, 154 N.E. 303; L.A. Grant Realty, Inc. v. Cuomo, 58 A.D.2d 251, 255, 396 N.Y.S.2d 524).*** Based upon a broker's position of trust, she is under a duty, during the course of her employment, to disclose to her principal all material information she possesses or obtains concerning the transaction involved, See ***[L.A. Grant Realty, Inc. v. Cuomo, supr].***

This is a perfect characterization of the relationship between the plaintiff and the mortgage broker. The Court of Appeals characterizes a fiduciary relationship as "fact specific;" indeed, it is axiomatic that "liability is not solely dependent upon an agreement or contractual relationship between the fiduciary and the beneficiary but results from the relation." The sine qua non of a fiduciary relationship, held the Court of Appeals, is "higher trust." Here, there is no question that the relationships between the parties were woven together with strands of such trust. A relationship of higher trust – and thus a fiduciary relationship – existed, without argument, between the plaintiff, his brother and Bjorn Koritz; there is similarly no doubt that a relationship of higher trust existed between plaintiff and the mortgage broker.

Christian DiPretoro was approached by Michael Clott in "…early 2006" with regard to the "purchasing of undervalued properties for sale." He was introduced to the Papapietro's on one occasion, also in 2006, and spoke to them on many successive occasions. He was working with Joe Schlamowitz at Bloomington Finance in the wholesale mortgage department, and Joe Schlamowitz was working as a mortgage broker. Clott recommended DiPretoro to the Papapietro's, who in turn used Schlamowitz to ensure the loans would go through.

Chris contacted Rocco, who then took a loan application from the brothers Papapietro. Before the loan was funded, but after the loan, documents had been signed, Schlamowitz contacted DiPretoro and informed him that the loan had been rescinded.

DiPretoro investigated, and was told by Clott that the rescission of the loan had been done Anthony. Clott said that Anthony was mentally unstable and that the loans should be funded anyway (note: the Papapietro's do in fact have a mentally unstable brother; however, it is not Anthony but Joseph). DiPretoro passed this information to Schlamowitz, who said that it was not his problem "…because Grand Bank would not have funded the loan unless Rocco and Anthony Papapietro had shown up in front of a bank representative, with proper identification and in writing that they do not wish to cancel the loan."

Lastly, there is no doubt that a fiduciary relationship existed on the part of Michael Clott. The moment that Clott began self-dealing, with an eye towards making money from the partnership that he was bound to advance the interests of, he violated his fiduciary duty to the other members of the LLC. *Please see, Coventry Real Estate Advisors LLC v. Developers Diversified Realty Corporation, 925 NYS 2d 476 (1st Department 2011).* New York courts take the fiduciary duties owed by one member of an LLC to another very seriously; *see, Pappas v. Tzolis, WL 4089439, 1, 1 (N.Y. A.D. 2011).*

In Pappas, there was an LLC formed for the purpose of developing and selling real estate. The articles of incorporation expressly excused members of the LLC from fiduciary duties towards one another. However, the 1st Department held that members of an LLC have fiduciary duties to one another regardless of any such provision or agreement.

This case is almost precisely on point to the matter at hand. In Pappas, the LLC was formed for a similar purpose as to the one in this case. One member was self-dealing, and tried to argue that he owed no duty to his fellow members of the LLC. The court explicitly rejected this argument.

After the loans were funded, Michael Clott illegally wrote checks against Rocco's account and transferred the proceeds from the wrongly funded loans to accounts he controlled. The banks failed to do any of the due diligence that is part and of what banks do when problems with the loan processes arose. At present, plaintiff is forced to repay mortgages that he tried to rescind and the fruits of which were converted to the usage of a "con artist," Clott, who is even now in prison.


Respectfully,


Anthony Papapietro
48 Orange Avenue
Staten Island, NY 10302
P: (718) 448-3971
F: (718) 448-7079
C: (917) 731-1908

Anthony Papapietro
48 Orange Avenue
Staten Island, NY 10302-2038

July 13, 2016

Shellpoint Mortgage Servicing
Customer Service
PO Box 10826
Greenville, SC 29603-0826

Re: Anthony Papapietro Loan Number #7130558450 Property Address:  8 Hawk Mew
    Salem, PA 18426

Dear Sir/Madam,

Thank you for taking my correspondence. I have written to you in the past to explain the
situation concerning this property, but for some reason I keep getting the same answer from
everyone that I owe on this loan. However, if you look into this you will see that the loan was
rescinded with in the 3-day rescission period in accordance to the RESPA LAW.

 I have owned this property with my brothers (Joseph Papapietro and Rocco Papapietro Jr.)
since the early 1990's; and I was given control of the property when my brother Joseph conveyed
the rights to the property during his divorce which was granted by Judge Maltese in November of
2000. Then my other brother (Rocco Jr.) turned over control to me fully in a February 9, 2001
letter. What this means you ask? Well the answer is very simple. **"This loan should have never
been funded"**! Therefore, the question is, how is a loan funded when it was clearly supposed to
rescinded. Furthermore, how do these banks get away with something like this, the scheme lies
fully on the shoulders of the architects of the scheme and not me.

Moreover, the people you should be going after are the ones that orchestrated and then pulled it
off. The person you should be going after is infamous Michael Howard Clott and his cronies,
along with their attorney Bjorn Koritz.

I would gladly explain the entire chain of events and I will provide you with details if you would
like. I will also like to inform you and give you permission to speak with Mr. Raymond G.
Schoentube Jr., on this matter, I have giving you a third-party authorization in the past on this
matter to speak with Mr. Schoentube,  but I just need to emphasize that this authority is still in
effect. Mr. Schoentube is my personal paralegal and knows all the details of this case.

Thank you for your time and for looking into this very serious and sensitive matter, I am looking
forward to hearing from someone.

Respectfully,


Anthony Papapietro
48 Orange Avenue
Staten Island, NY 10302
M: (917) 731-1908

Anthony Papapietro
48 Orange Ave
Staten Island, NY 10302-2038

February 13, 2017

Ditech Financial LLC
P.O. Box 6172
Rapid City, SD 57709-6172

Re: Account Number   50668573
      Property Address:   49 Orange Avenue
                                   Staten Island, NY 10302

Dear John B,

I am writing in response to a correspondence I received dated February 3, 2017, I tried calling you numerous times but I have not heard back from you on this matter. On February 13, 2017 I spoke with one of the customer service representatives and they connected me to your voice mail were I left a message.

As for the contents in the letter pertaining to the creditor, I do not ever recall a GMAC INS Company; the amount of the debt seems to very high as well. Please have some contact as soon as possible to discuss this very serious matter.

Thank you in advance for taking and I am looking forward to hearing from someone soon.

Regards,

_____
Anthony Papapietro
48 Orange Avenue
Staten Island, NY 10302
P: (718) 448-3971
F: (718) 448-7079
M: (917) 731-1908

# EXHIBIT 12



September 23, 2015

Rocco Papapietro Jr
48 Orange Ave
Staten Island NY 10302

RE:  EverBank Loan Number 9000829208
     Case Reference   Rocco Papapietro Jr

Dear Valued Client(s):

Thank you for contacting EverBank.  This letter is to acknowledge receipt of your recent inquiry.

We are researching your inquiry and you will receive a reply shortly. We appreciate your patience.

In the meantime, should you need additional assistance, please contact our Client Solutions Team toll free at 888.882.3837, Monday through Friday, 8:00AM to 9:00PM, ET.

Sincerely,

EverBank                          PS110

EverBank is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.

Notice to Any Recipient Who Has (a) Filed for Bankruptcy or (b) Received a Discharge in Bankruptcy:

In the event you are subject to an Automatic Stay issued by the United States Bankruptcy Court, this communication is not intended to collect, assess, or recover a debt. In the event the referenced debt has been discharged in bankruptcy, this communication is not intended to collect, recover, or offset any such debt as your personal liability.



**Everhome** — MORTGAGE —

**green tree**
relationships that work

ico Green Tree
Green Tree Servicing LLC
PO Box 6172
Rapid City, SD 57709-6172
Phone 1-855-447-7486
Fax 1-866-870-6916
GTServicing.com

April 15, 2014

ROCCO PAPAPIETRO JR
48 ORANGE AVE
STATEN ISLAND NY 10302-2038

Everhome Mortgage ("Everhome") Account Number: 9000829206
Green Tree Servicing LLC ("Green Tree") New Account Number: 824531644

Dear Rocco Papapietro Jr:

Welcome to Green Tree. The servicing of your mortgage loan – that is, the right to collect loan payments from you – is being transferred from Everhome to Green Tree effective May 1, 2014. The servicing transfer does not affect any terms or condition of your current mortgage loan, other than the terms directly related to the servicing of your loan. You can mail your payments directly to Green Tree at the following address: Green Tree Servicing LLC, PO Box 7169, Pasadena, CA 91109 - 7169.

Green Tree will begin posting payments to your account on or about May 12, 2014. If your payment was received by Green Tree or Everhome, prior to the posting date, we will apply your payment as of the day that it was received and no late fee will be assessed to your account.

You should be receiving your first statement from Green Tree by mail the week of May 19, 2014. If you have any questions about the transfer of your mortgage loan servicing to Green Tree, we encourage you to visit:

www.GTServicing.com/welcome

There you can register to securely access your account online, make a payment, establish a recurring electronic mortgage loan payment and obtain answers to frequently asked questions.

We are pleased to have you as a new customer. The following pages include more detailed information about this transfer and our services. If you need information regarding your account you can:

1) Visit our website at GTServicing.com.
2) Call us toll-free at 1-855-447-7486.
3) Make your inquiry to us at: Green Tree Customer Service Dept, PO Box 6172, Rapid City, SD 57709 -6172.

This communication is from a debt collector. It is an attempt to collect a debt, and any information obtained will be used for that purpose.

Please note: If you had an automatic payment plan with Everhome, your payments will continue without interruption. Following May 1, 2014 your bank transaction description will indicate that your payment is now being made to Green Tree.

---

LTR-130
RESPA Transfer Letter - Joint, 12/14/2013

**green tree**
relationships that work

INITIAL PAYMENT COUPON
-Please make checks payable to Green Tree-
ACCOUNT NUMBER 824531644

This payment coupon is furnished as a convenience.

| TOTAL DUE | $2,514.06 |
| TOTAL ENCLOSED | $ |

Enter total amount of payment enclosed

GREEN TREE SERVICING LLC
PO BOX 7169
PASADENA, CA 91109-7169

Rocco Papapietro Jr
48 Orange Ave
Staten Island NY 10302-2038

**NOTICE OF SERVICING TRANSFER**

The servicing of your mortgage loan is being transferred, effective May 1, 2014. This means that after this date, a new servicer will be collecting your mortgage loan payments from you. Nothing else about your mortgage loan will change.

Everhome Mortgage ("Everhome") is now collecting your payments. Everhome will stop accepting payments received from you after April 30, 2014.

Green Tree Servicing LLC ("Green Tree") will collect your payments going forward. Your new servicer will start accepting payments received from you on May 1, 2014.

**Send all payments due on or after May 1, 2014 to Green Tree at this address:**

**Green Tree Servicing LLC**
**PO Box 7169**
**Pasadena,CA  91109 - 7169**

If you have any questions for either your present servicer, Everhome, or your new servicer, Green Tree, about your mortgage loan or this transfer, please contact them using the information below:

| Current Servicer: | New Servicer: |
|---|---|
| Everhome | Green Tree |
| Client Service Team | Customer Service |
| 1-855-297-3893 | 1-855-447-7486 |
| P.O. Box 2167 | PO Box 6172 |
| Jacksonville, FL  32232-0004 | Rapid City, SD 57709-6172 |

Under Federal law, during the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer on or before its due date may not be treated by the new servicer as late, and a late fee may not be imposed on you.

| Everhome | April 15, 2014 |
|---|---|
| Present Servicer | Date |

and

| Green Tree | April 15, 2014 |
|---|---|
| New Servicer | Date |

This communication is from a debt collector. It is an attempt to collect a debt, and any information obtained will be used for that purpose.

x

## ADDITIONAL IMPORTANT INFORMATION

**Payment Processing**
You will be receiving your monthly statement from Green Tree within the next twenty-five days.  If your payment is due prior to receiving a statement  please send your payment to the address below with your new Green Tree account number noted on the memo line.  After receiving your first Green Tree statement, please destroy any Everhome payment coupons and begin using the coupon attached to the bottom of the monthly statement.  Please be sure to include your new Green Tree account number and send any future payments made after April 30, 2014 to the following address:

**Green Tree Servicing LLC
PO Box 7169
Pasadena,CA  91109 - 7169**

**Automatic Payment Deductions**
If you are currently participating in an Automated Clearing House (ACH) payment plan, also known as Auto Pay, Green Tree will continue to deduct your payment from your bank account. You may experience a one-time delay in the deduction of your first payment as we install your account data onto Green Tree's system. No late charge will be assessed and we will deduct and post your payment effective on or before your due date.

If you wish to set up Auto Pay with Green Tree, please create or log into your account at GTServicing.com  to access the Auto Payment link. After the transfer of servicing date, you will be able to self-enroll in this program. You are also able to enroll by printing the Auto Pay authorization forms from our website, enter in your information and either mail in or fax to Green Tree for processing.

**Green Tree Servicing
PO Box 6172
Rapid City, SD 57709-6172**

**Bill Payment Services**
If your payments currently are made through a military allotment process or a third party bill payment service (including online banking services), please inform your vendor or financial institution of the following:

- Your nine digit Green Tree Account # 824531644
- Change of payee to Green Tree Servicing LLC
- The new payment  mailing address is:

**Green Tree Servicing LLC
PO Box 7169
Pasadena,CA  91109 - 7169**

If you currently have future dated Pay By Phone payment(s) set up with Everhome, these transactions were canceled upon transfer of servicing to Green Tree. If you would like to set up future Pay By Phone payments with Green Tree, please contact our Customer Service Department at 1-855-447-7486.

**Loan Modifications**
If you are currently in an active trial modification or have a modification review underway, this information will be forwarded to Green Tree so it can continue the process with you. Please call Green Tree at 1-855-447-7486  after the loan transfer date if you have questions about your modification.

**Payoffs**
Payoff checks sent via regular mail , or via United States Postal Service overnight delivery, sent after April 30, 2014, should be sent to the following address:

**Green Tree Servicing LLC
Dept CH 9052
Palatine, IL 60055 - 9052**

Payoff checks sent via UPS/FedEx/Airborne Priority Mail  , sent after April 30, 2014, should be sent to the following address:

**Green Tree Servicing LLC
Attn: Payoff 9052
5505 N Cumberland Ave. Suite 307
Chicago, IL 60656**

**Insurance Loss Payee**
The mortgagee clause of your homeowners insurance policy, and if applicable your flood insurance policy, needs to be updated to reflect Green Tree Servicing LLC as a loss payee.  Everhome has requested that your property insurance company change the mortgage company listed on your policy. Please have your insurance agent update your policy with the information listed below.  Proof of insurance can be faxed to 1-866-263-8962  or mailed to Green Tree Servicing LLC at the following address:

Green Tree Servicing LLC
Its affiliates and/or assigns
PO Box 979282
Miami FL 33197-9282

**1098 Statements**
Everhome will send you an IRS 1098 Tax and Interest Statement that reflects all tax and interest payments received by Everhome between January 1, 2014 and April 30, 2014.  Green Tree will send a tax and interest statement for payments received between May 1, 2014 and December 31, 2014.  Both statements will be mailed no later than January 31, 2015.

LTR-130
0477144 000065096 09GTR8 0926738 AA (P1)

**Customer Service**
Any questions, complaints or inquiries you have regarding your loan may always be directed in writing to Green Tree Customer Service Department at the below-referenced address or by calling the toll-free phone number at 1-855-447-7486, between 7:00 a.m. and 8:00 p.m. CST, Monday through Friday and between 7:00 a.m. and 1:00 p.m. CST, on Saturday. You can also access our website at GTServicing.com 24 hours a day. The website allows convenient, secure access to your basic account information, and allows you to make payments on your account, obtain payoff quotes and insurance information. The website will be available to you shortly after the servicing transfer day. You may also contact Green Tree by writing to us at the following address:

Green Tree
PO Box 6172
Rapid City, SD 57709-6172

Everhome has designated the following address where mortgage loan customers must send any Qualified Written Request, Notice of Error or Request for Information:  Client Service Team, P.O. Box 2167, Jacksonville, FL 32232-0004.

Green Tree has designated the following address where mortgage loan customers must send any Qualified Written Request, Notice of Error or Request for Information: PO Box 6176, Rapid City, SD 57709-6176

**Fair and Accurate Credit Transactions Act Notice - We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.**


a Walter company

PO Box 6172
Rapid City, SD 57709-6172

Phone: 1-800-643-0202
Fax: 1-866-870-9919
ditech.com

August 15, 2018

***************AUTO**MIXED AADC 541
ROCCO PAPAPIETRO JR
48 ORANGE AVE
STATEN ISLAND, NY 10302-2038

RE:   Ditech Financial LLC ("Ditech")
      Account Number: 0050668573

Dear Valued Customer:

## NOTICE OF SERVICING TRANSFER

The servicing of your mortgage account is being transferred, effective with your payment due September 1, 2018. This means that after this date, a new servicer will have the right to collect your mortgage account payments. If your new servicer will accept payments prior to this date, it will be noted below. Nothing else about your mortgage account will change.

Ditech is now collecting your payments. Ditech will stop accepting payments received from you on August 29, 2018.

Selene Finance LP ("Selene Finance LP") will collect your payments going forward. Your new servicer will start accepting payments received from you on August 30, 2018*.

**All payments made on or after August 30, 2018 should be sent to Selene Finance LP at this address:**

Attn: Cashiering
P.O. Box 71243
Philadelphia, PA 19176-6243

If you have any questions for either your present servicer, Ditech, or your new servicer, Selene Finance LP, about your mortgage account or this transfer, please contact them using the information below:

Current Servicer:
Ditech
Customer Service
1-800-643-0202
P.O. Box 6172
Rapid City, SD 57709-6172

New Servicer:
Selene Finance LP
Customer Service
1-877-735-3637
P.O. Box 422039
Houston, TX 77242-4239

**This communication is from a debt collector. It is an attempt to collect a debt, and any information obtained will be used for that purpose.**


EQUAL HOUSING
LENDER

LTR-026

Goodbye RESPA Letter, 08082018

If Ditech Financial LLC has offered you Financial Counseling through Balance of San Francisco and you have already accepted counseling, you may continue working with Balance of San Francisco at Ditech's expense. If you were offered financial counseling through Balance of San Francisco, and you have not accepted Financial Counseling, you have until August 30, 2018 to accept this service at Ditech's expense. You may contact Balance of San Francisco at 1-888-412-2227, Monday - Thursday 8:00 am to 8:00 pm, Friday 8:00 am to 5:00 pm PST.

Under Federal law, during the 60-day period following the effective date of the transfer of the account servicing, an account payment received by your old servicer on or before its due date may not be treated by the new servicer as late, and a late fee may not be imposed on you.

Ditech has designated the following address where mortgage loan customers must send any Qualified Written Request, Notice of Error or Request for Information:  PO Box 6176, Rapid City, SD 57709-6176.

<u>Ditech</u>                                                      <u>August 15, 2018</u>
Present Servicer                                         Date

*If you are currently participating in an automated payment plan with Ditech, your payment plan will be cancelled as part of the transfer of servicing to Selene Finance LP effective August 30, 2018.  If you are interested in establishing automatic payments with Selene Finance LP, please contact them after the transfer effective date.

If you use a third party bill pay provider for your payments, please make arrangements to notify them of your new servicer's contact information.  If you are interested in establishing automatic payments with Selene Finance LP, please contact them after the transfer effective date.



Goodbye RESPA Letter, 08082018

LTR-026

001414-014800-000007-014800 2022768 4595LT01_2

 

9990 Richmond Avenue
Suite 400 South
Houston, TX 77042
Telephone (877) 735-3637
www.selenefinance.com

Hours of Operation (CT)
Monday - Thursday: 8 a.m. - 9 p.m.
Friday: 8 a.m. - 5 p.m.

## SERVICING TRANSFER INFORMATION

09/13/2018

ROCCO PAPAPIETRO JR
48 ORANGE AVE
STATEN ISLAND, NY 10302

Selene Finance Account #:   10221281
Current UPB:                $342,698.08
Mortgagor(s):               ROCCO PAPAPIETRO JR
Property:                   49 ORANGE AVE
                            STATEN ISLAND, NY 10302

Dear Mortgagor (s):

Welcome to Selene Finance LP ("Selene"). The servicing of your mortgage is transferring from Ditech Financial LLC to Selene. Please review the following important information regarding your account.

Effective 08/30/2018, please begin sending your mortgage payments to Selene using one of the options below.

| Payment Options: | **Mail**<br>Selene Finance LP<br>Attention: Cashiering Department<br>P. O. Box 71243<br>Philadelphia, PA 19176-6243 | **Phone**<br>Loss Mitigation Department<br>(877) 768-3759 |
|---|---|---|

*Where allowed by state law, Selene charges a nonrefundable convenience fee of $8.00 for payments made through the automated phone system or $12.00 when made with an agent. No convenience fee will be assessed for payments made by mail, automatic payment service via ACH, or through www.selenefinance.com.

Please contact your insurance agent to ensure that Selene receives proof that your property is insured with a Hazard Policy and for Flood and Windstorm, where applicable. Please take the necessary steps to have all future bills and proof of insurance forwarded to the addresses below:

| **Insurance Department**<br>Selene Finance LP<br>P. O. Box 461470<br>San Antonio, TX 78246<br>Tel: (866) 318-1084<br>Fax: (866) 816-6837 | **Property Taxes**<br>Selene Finance LP #11740<br>P. O. Box 9217<br>Coppell, TX 75019 |
|---|---|

Selene will send you a Billing Statement each month; however, if you do not receive the statement before your 12/01/2012 payment is due, please send your payment with one of the Temporary Coupons enclosed.

If more than one account is transferring to Selene, this letter refers only to account number 10221281. Selene will send you a Welcome Letter and Temporary Coupons for each account. When making payments, please send the correct amount for each account and include the payment coupon(s) with your remittance.

If your previous servicer automatically drafted payments from your checking or savings account, this service is not transferable. Enclosed is an automatic drafting authorization form, which will allow you to establish an ACH draft with Selene. Please return the completed form to Selene Finance LP, Attention: Cashiering Department, P. O. Box 422039, Houston, TX 77242-4239. Please send payments by check or money order until Selene notifies you in writing that the automatic draft process is complete.

By January 31 of each year, Selene will provide an Annual Tax and Interest Statement for your IRS reporting for the portion of the previous year that Selene serviced your account.

If your account is currently escrowed for taxes and/or insurance, Selene is required by law to analyze your mortgage account. Selene will notify you in writing if your payment amount changes.

Premiums for mortgage life, accidental death, or disability insurance will not be transferred from your previous servicer. You may contact your carrier for arrangements to maintain your coverage through direct billing. Please contact your previous servicer if you are unsure of your carrier's name.

NOTICE REGARDING REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA): Please review the attached Notice of Assignment, Sale or Transfer of Servicing Rights. This is the official notification required by law from the transferee, Selene Finance LP. **That notice also includes important information about your consumer rights under federal and state law.**

NOTICE REGARDING FAIR AND ACCURATE CREDIT TRANSACTIONS ACT OF 2003 (FACTA): Selene may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**Partial Payment Policy** - Your lender may hold partial payments in a separate account until you pay the remainder of the payment, and then apply the full payment to your account. If this account is sold, your new lender may have a different policy.

Should you have questions, please contact Selene's Customer Service Department at (877) 735-3637 during the hours indicated above or visit our website at www.selenefinance.com. Any written correspondence should be sent to Selene Finance LP, Attention: Customer Service Research, P. O. Box 421517, Houston, TX 77242. You may also contact Ditech Financial LLC at 1-800-643-0202, Monday - Thursday 8:00 a.m. to 8:00 p.m., Friday 8:00 a.m. to 5:00 p.m. PST.

Sincerely,

Selene Finance LP

Enclosure: Notice of Assignment, Sale, or Transfer of Servicing Rights; Notice of your Financial Privacy Rights; Authorization Agreement for Pre-Authorized Payments; Temporary Coupon



9990 Richmond Avenue
Suite 400 South
Houston, TX 77042
Telephone (877) 735-3637
Fax (866) 926-5496
www.selenefinance.com

Hours of Operation (CT)
Monday – Thursday: 8 a.m. – 9 p.m.
Friday: 8 a.m. – 5 p.m.

December 28, 2018

Anthony Papapietro
48 Orange Avenue
Staten Island, NY 10302

RE:   Property Address:   48 Orange Avenue
                          Staten Island, NY 10302
      Mortgagor(s):       Rocco Papapietro Jr
      Account Number:     0010221281

Dear Mr. Anthony Papapietro:

Selene Finance LP ("Selene") received your correspondence dated October 18, 2018 on November 15, 2018, as an authorized third party on the referenced account, requesting information and copies of documents related to the above referenced mortgage account.

You indicate in your letter that it is intended to constitute a Qualified Written Request under the Real Estate Settlement Procedures Act ("RESPA"). In response, we are providing copies of documents and information that relate to the servicing of the account that we have in our possession that show the obligation of this debt in the name of Rocco Papapietro Jr.

Please note, Selene is not required to provide additional information or documentation that is proprietary, overly burdensome or duplicative and, as a result, is under no obligation to respond to certain inquires contained in your letter. As a result, some of your requests and questions have not been responded to or have been partially responded to wherein RESPA requires that Selene do so.

In addition, please be advised that a Note or a partial interest in the Note can be sold one or more times. Such a sale might result in the change in the entity known as the Servicer that collects periodic payments due under the Note and Mortgage ("Security Instrument") and performs other mortgage servicing obligations under the Note, Security Instrument, and applicable laws. Enclosed for your reference are copies of the Note and Security Instrument that validate the debt in the name of Rocco Papapietro Jr.

Accordingly, effective August 30, 2018, the servicing of the account transferred to Selene from Ditech Financial, LLC, and at the time of transfer, the account was delinquent and next due for the December 1, 2012 contractual installment. For your review, enclosed is a copy of the Notice of Assignment, Sale or Transfer of Servicing Rights dated and sent to the mortgagor September 12, 2018. In addition, please find enclosed copies of the requested Assignments of Mortgage.

Re:  Rocco Papapietro Jr
December 28, 2018
Page 2

Please note, Selene is currently servicing the account on behalf of the current owner and Creditor, MTGLQ Investors, LP, to whom the debt is owed. Therefore, all inquiries regarding the account should be directed to our office at the address above.

Last, as of the date of this letter, the account is sixty-eight (68) months delinquent and contractually due for the May 1, 2013 through December 1, 2018 installments. Further, due to the continued delinquency of the account, the referenced property has been referred to counsel to commence foreclosure proceedings; however, no foreclosure sale is currently scheduled.

We believe that the information and documentation provided with this letter responds to your servicing-related requests.

If you have any additional questions regarding this letter, please contact our office.


Sincerely,

Jennifer Mallet
Customer Service Research Specialist
Selene Finance LP



Enclosures:   Letter dated September 12, 2018
              Note
              Mortgage
              Assignments of Mortgage (4)




Selene Finance LP is a debt collector attempting to collect a debt and any information obtained will be used for that purpose.

Please note that if you are in bankruptcy or received a bankruptcy discharge of this debt, this communication is not an attempt to collect the debt against you personally.

**For Servicemembers and their Dependents:** The Federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including, under most circumstances, a prohibition on foreclosure during and twelve months after the servicemember's active duty service.  Selene will not foreclose on the property of a servicemember or his or her dependent during that time, except pursuant to a court order.  You also may be entitled to other protections under these laws, including interest rate and fee relief.  Please contact us to learn more about your rights.

**For properties located in New York:** Selene Finance LP is registered with the Superintendent.  You may file complaints about the Servicer with the New York State Department of Financial Services.  You may obtain further information from the New York State Department of Financial Services by calling the Department's Consumer Assistance Unit at (800) 342-3736 or by visiting the Department's website at www.dfs.ny.gov.

NMLS #6312



9990 Richmond Avenue
Suite 400 South
Houston, TX 77042
Telephone (877) 735-3637
Fax (866) 926-5496
www.selenefinance.com

Hours of Operation (CT)
Monday – Thursday: 8 a.m. - 9 p.m.
Friday: 8 a.m. - 5 p.m.

January 8, 2020

Anthony Papapietro
48 Orange Ave
Staten Island, NY 10302

RE:     Property Address:     49 Orange Ave, Staten Island, NY 10302
        Account Number:      0010221281
        Mortgagor:           Rocco Papapietro Jr.
        USPS Certified Mail:  7019 1120 0001 6054 4809
                             7019 1120 0001 6054 4816

Dear Mr. Papapietro:

Selene Finance LP ("Selene") received your letters dated January 2, 2020 on January 7, 2020, regarding the above referenced mortgage account.

In your correspondence you requested information pertaining to the above referenced mortgage account and that your correspondence be handled as a Qualified Written Request pursuant to Real Estate Settlement Procedures Act ("RESPA") Guidelines.

Selene takes the position that we have made thorough and exhaustive efforts to address your ongoing requests for the above referenced mortgage account and we consider your correspondence to be duplicative.

Nevertheless, in your correspondence you state the following: "I need to directly address the statement *"We have tried unsuccessfully to contact you."* This is an untrue statement and 100% full-blown lie. I have sent numerous correspondence to your office, dated 12/14/19, 9/28/19, 9/2/19, 8/27/19, and that is just a few of the dated correspondence that was sent. However, Selene Finance HAS NOT placed one telephone call or sent out any correspondence. The only correspondence that has been received from Selene Finance is a *"Response Letter"* which Selene Finance states, *"We are in receipt of correspondence"*."

In response, we have enclosed copies of our letters dated January 6, 2020, September 11, 2019 and August 30, 2019 that we sent in response to dated correspondence referenced in your letter. Please note, our records do not reflect correspondence from you dated September 28, 2019.

In addition, we have enclosed a copy of the Comments for the above referenced mortgage account that reflect a log of telephone calls made in attempt to contact the mortgagor regarding the account.

As of the date of this letter, the account is eighty-one (81) months delinquent and due for May 1, 2013 through January 1, 2020 installments.

The single point of contact assigned to the account is Juanita Gonzales. You may contact Ms. Gonzales or a representative in our Loan Resolution Department at (877) 768-3759 to discuss the account.

RE: Rocco Papapietro Jr.
January 8, 2020
Page 2


Should you have any additional questions, please contact our office.

Sincerely,

Danielle Richardson
Customer Service Specialist
Selene Finance LP


Enclosures:     Letter dated January 6, 2020
                Letter dated September 11, 2019
                Letter dated August 30, 2019
                Comments

Selene Finance LP is a debt collector attempting to collect a debt and any information obtained will be used for that purpose.

Please note that if you are in bankruptcy or received a bankruptcy discharge of this debt, this communication is not an attempt to collect the debt against you personally.

**For Servicemembers and their Dependents**: The Federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including, under most circumstances, a prohibition on foreclosure during and twelve months after the servicemember's active duty service.  Selene will not foreclose on the property of a servicemember or his or her dependent during that time, except pursuant to a court order.  You also may be entitled to other protections under these laws, including interest rate and fee relief. Please contact us to learn more about your rights.

**For properties located in New York**: Selene Finance LP is registered with the Superintendent.  You may file complaints about the Servicer with the New York State Department of Financial Services.  You may obtain further information from the New York State Department of Financial Services by calling the Department's Consumer Assistance Unit at (800) 342-3736 or by visiting the Department's website at www.dfs.ny.gov.

NMLS #6312

# SELENE®
## FINANCE

9990 Richmond Avenue
Suite 400 South
Houston, TX 77042
Telephone (877) 735-3637
Fax (866) 926-5496
www.selenefinance.com

Hours of Operation (CT)
Monday – Thursday: 8 a.m. - 9 p.m.
Friday: 8 a.m. – 5 p.m.

April 2, 2019

Anthony Papapietro
48 Orange Avenue
Staten Island, NY 10302

RE:     Property Address:      49 Orange Avenue
                               Staten Island, NY 10302
        Account Number:        0010221281
        Mortgagor(s):          Rocco Papapietro Jr.

Dear Mr. Papapietro:

Selene Finance LP ("Selene") received your letters dated March 14 and 23, 2019 on March 19 and April 1, 2019, respectively, regarding the above referenced mortgage account.

In your correspondence you requested information pertaining to the above referenced mortgage account and that your correspondence be handled as a Qualified Written Request pursuant to Real Estate Settlement Procedures Act ("RESPA") Guidelines.

Selene is under no obligation to provide information or documentation that is proprietary, as a result, the majority of items in your letter have not been provided or responded to, or have been partially provided and responded to, wherein RESPA requires Selene to do so.

Upon review of the account, our records confirm that we previously addressed some of the requests referenced in your letters by way of our enclosed letters dated December 28, 2018, February 13, 2019, March 12, 2019 and April 2, 2019.

As it pertains to your request for the original Note, please be advised that Selene does not, nor are we legally required to, provide original documents to mortgagors.

Furthermore, we acknowledge the concerns raised by you in regards to the origination of the above referenced account and upon review our records do not reflect that a Rescission was completed. We respectfully request that you forward documentation to our Customer Service Department that supports your claim that the mortgage loan was rescinded. Upon receipt of the documentation, we will review the information and provide a written response with the results of our research.

As of the date of this letter, the account is seventy-two (72) months delinquent and due for the May 1, 2013 through April 1, 2019 installments. The account is currently in active foreclosure status; however, there is no scheduled sale date at this time.

The single point of contact assigned to the account is Juanita Gonzales. You may contact Ms. Gonzales or a representative in our Loan Resolution Department at (877) 768-3759 to discuss the account.